The State of Ohio, Appellant, *v.* Moss, Appellee.

[Cite as State v. Moss (1982), 69 Ohio St. 2d 515.]

(No. 81-515—Decided March 3, 1982.)

516

*Mr. Michael Miller,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellant.

*Mr. Michael Romanello,* for appellee.

LOCHER, J. In a challenge predicated upon Ohio's multiple-count statute and the Double Jeopardy Clauses of both the United States and Ohio Constitutions appellant requests that this court reinstate appellee's conviction and sentence for aggravated burglary. Appellant contends that appellee's conviction and sentence in no way contravened his statutory and constitutional rights.

Any case which raises a constitutional question must first be approached by reciting the appropriate constitutional language. The Fifth Amendment to the United States Constitution provides, *inter alia,* " * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, Section 10 of Article I of the Ohio Constitution proclaims that " * * * No person shall be twice put in jeopardy for the same offense." Moreover, even absent the enactment of Ohio's constitutional provision prohibiting the placement of any person in double jeopardy, the Double Jeopardy Clause of the United States Constitution would still have been enforceable against the state through the Fourteenth Amendment. *Benton* v. *Maryland* (1968), 395 U. S. 784, 794.

The apparent clarity of both the federal and state constitutional proscriptions against former jeopardy notwithstanding, the Double Jeopardy Clause has spawned a series of judicial interpretations that comprise a veritable labyrinth which would confound even the brightest jurisprudential scholars.[3] None-

---

[3] " * * * Despite its roots in antiquity * * * [the double jeopardy] guarantee seems both one of the least understood and, in recent years, one of the most frequently

theless, at least one principle has evolved through the decisions in the area of former jeopardy, that which delineates the scope of the safeguard that the Double Jeopardy Clause affords. The clause offers threefold protection for a defendant. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina* v. *Pearce* (1969), 395 U. S. 711, 717. In the cause *sub judice*, it is the third of the tripartite guarantees that is in issue and which we address herein. Consequently, the decisional law pertaining to multiple punishments for the same criminal activity is the only constitutional focus for this court. *Whalen* v. *United States* (1980), 445 U. S. 684 (dissenting opinion by Mr. Justice Rehnquist). Thus, in the context of the case at bar, appellee's reliance on *Harris* v. *Oklahoma* (1977), 433 U. S. 682, its progeny and other cases of its genre, involving multiple *prosecutions* for the same crime, is misplaced.

Where, as here, it is asserted that the state, by levying in one criminal proceeding multiple punishments against a defendant for criminal activity emanating from one transaction, has contravened the defendant's constitutional rights, the courts have held that the proper ambit of appellate review is limited to ensuring that the trial court did not exceed the sentencing authority which the General Assembly has permitted the judiciary. *Albernaz* v. *United States* (1981), 450 U. S. 333; *Whalen* v. *United States, supra; Brown* v. *Ohio* (1977), 432 U. S. 161. R. C. 2929.41 does empower trial courts, in a single criminal proceeding, to sentence defendants to serve consecutive terms of imprisonment for the violation of more than one criminal statute.[4] The trial court's discretion to order such cumulative sentences is not, however, constitutionally un-

litigated provisions of the Bill of Rights." *Whalen* v. *United States* (1980), 445 U. S. 684, at 699 (dissenting opinion of Mr. Justice Rehnquist). " * * * the decisional law in the area [of the Double Jeopardy Clause] is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz* v. *United States* (1981), 450 U. S. 333, at 343.

[4] R. C. 2929.41 provides, in relevant part:

"(B) A sentence of imprisonment shall be served consecutively to any other sentence of imprisonment, in the following cases:

"(1) When the trial court specifies that it is to be served consecutively."

bridled. The General Assembly must have, in effect, authorized the imposition of the consecutive sentences.

In *Brown* v. *Ohio, supra,* the United States Supreme Court defined the scope of the test to be administered to determine the constitutionality of a court's levying of consecutive sentences against a defendant in one criminal proceeding. The court stated, at page 165, " * * * [w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishment for the same offense." Thus, a determination of what punishments the General Assembly has authorized the court, in a single proceeding, to impose for conduct constituting both aggravated murder and the underlying felony of aggravated burglary must be made before the constitutionality of the trial court's sentencing of the appellee in the present case can be correctly appraised. *Whalen* v. *United States, supra.*

The only appropriate starting point for such an inquiry is the state's multiple-count statute, R. C. 2941.25, which provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

The General Assembly then has authorized trial courts, in a single criminal proceeding, to convict and to sentence a defendant for two or more offenses, having as their genesis the same criminal conduct or transaction, provided that the offenses (1) were not allied and of similar import, (2) were committed separately or (3) were committed with a separate animus as to each offense. We find that, as the offenses with which appellee was charged were not allied and were committed separately, the trial court did not exceed its legislatively-

endowed authority by sentencing him to serve consecutive terms of imprisonment.

In interpreting *State* v. *Donald* (1979), 57 Ohio St. 2d 73, this court, in *State* v. *Logan* (1979), 60 Ohio St. 2d 126, declared at page 128:

"In essence, *Donald* established that in order for two crimes to constitute allied offenses of similar import, there must be a recognized similarity between the elements of the crimes committed. The offenses and their elements must correspond to such a degree that commission of the one offense will result in the commission of the other." The court held, in *State* v. *Donald, supra,* that rape and kidnapping were "allied offenses of similar import" within the contemplation of R. C. 2941.25(A); and that, in order to effectuate the rape, it was essential that the victim first be kidnapped, *i.e.,* by force, threat or deception restrained of his or her liberty.[5] As regards aggravated murder and aggravated burglary, however, no such nexus exists. The two offenses are not prerequisites, one for the other. To consummate either offense, the other need not by definition be committed. Aggravated murder and aggravated burglary are never merely incidental to each other as kidnapping was incidental to and an element of the rape in *State* v. *Donald, supra.*

Even assuming, *arguendo,* that aggravated murder and aggravated burglary are allied offenses of similar import, as the two offenses were "committed separately," the trial court, in the case *sub judice,* still acted properly in sentencing the appellee to consecutive terms of imprisonment. Appellee completed commission of the crime of aggravated burglary once he trespassed, using force or stealth and with the intent to therein commit a theft offense, in an occupied structure and assumed control of a deadly weapon. Thus, all criminal actions he subsequently undertook, *i.e.,* the aggravated murder of the

---

[5] In reaching its conclusion in *State* v. *Donald, supra,* at 75, this court reasoned: " * * * Both offenses, by their very nature, are committed for the same purpose. The kidnapping precedes the actual rape, but can be committed whether the conduct of the offender ultimately results in rape. The use of force or threat of force is a necessary element of the crime of rape, and the same force or threat may constitute one of the elements of kidnapping * * *. Necessarily, in the crime of rape, the victim must be restrained of her liberty, which can constitute an element of kidnapping. As indicated, the motivation is the same. * * * "

victim, were separate acts for the purpose of R. C. 2941.25. In *State* v. *Frazier* (1979), 58 Ohio St. 2d 253, this court has held similarly in finding that a defendant, charged with aggravated robbery and aggravated burglary, may be convicted of both offenses under the "separate acts" provision of R. C. 2941.25 when each offense is consummated at a distinct time during the course of the criminal conduct giving rise to the charges.

Notwithstanding the fact that the trial court, in the present case, did not, as is apparent from a reading of R. C. 2941.25, exceed the authority with which the General Assembly vested it, appellee nonetheless contends that the rule that the United States Supreme Court articulated in *Blockburger* v. *United States* (1932), 284 U. S. 299, compels a contrary result.[6] We need not resort to the *Blockburger* test, however, to evaluate the constitutionality of the trial court's action in the case *sub judice.* As the United States Supreme Court recently wrote, in *Albernaz* v. *United States, supra* (450 U. S. 333), at 340, in construing its decision in *Blockburger, supra:*

"The *Blockburger* test is a 'rule of statutory construction' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent."

See, also, *Iannelli* v. *United States* (1975), 420 U. S. 770. The *Blockburger* test can serve no useful purpose in resolving the issue presented herein as the legislative intent to permit cumulative sentencing for the commission of aggravated murder and aggravated burglary arising from one transaction is manifest. Indeed, any ambiguity as to legislative intent that might possibly exist could hardly outlast the Committee Comment to R. C. 2941.25.[7] The Comment reads, in pertinent part:

---

[6] According to the United States Supreme Court, in *Blockburger* v. *United States, supra,* at 304, to appraise the constitutionality of cumulative sentencing for the abrogation of two discrete criminal statutes:

" * * * The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. * * * "

[7] The Supreme Court of Ohio, in construing the state's statutes, may refer to the Ohio Legislative Service Commission's analysis. *Meeks* v. *Papadopulos* (1980), 62 Ohio St. 2d 187, 191.

" * * * an armed robber who holds up a bank and purposely kills two of the victims can be charged with and convicted of one count of aggravated robbery and of two counts of aggravated murder. Robbery and murder are dissimilar offenses * * *."

Where, as in the case *sub judice,* the General Assembly has so clearly granted trial courts latitude to impose cumulative sentences, the *Blockburger* analytical approach is entirely inapposite. Only where doubt is extant as to the correct construction of the mutliple crimes statute may the *Blockburger* test be properly employed, and then it must only serve as a complement to the rules commonly applied to ascertain legislative intent.

Similarly, we must decline appellee's invitation to apply the rule of lenity to the case at bar. R. C. 2941.25 is ambiguous neither on its face nor as it relates to the particular question presently at issue. Consequently, justice would not be served if lenity were deferred to in rendering our decision herein. See *Albernaz* v. *United States, supra.*

We find clearly reflected in Ohio's multiple-count statute, R. C. 2941.25, the General Assembly's intent that a trial court may, in a single criminal proceeding, impose consecutive sentences upon a defendant convicted of aggravated murder and aggravated burglary. Thus, in the case *sub judice,* the trial court by so sentencing the appellee violated neither his rights under R. C. 2941.25 nor those guaranteed by the Ohio and United States Constitutions.

Accordingly, we reverse the judgment of the Court of Appeals.

*Judgment reversed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.