Appellant, Edward Bettem, appeals his conviction in the Belmont County Court of Common Pleas on a single count of rape and seven counts of kidnapping.
Appellant was originally indicted on September 10, 1992 on a single count of felonious sexual penetration, a violation of R.C. 2907.12(A)(2), a single count of rape, in violation of R.C. 2907.02(A)(2), seven counts of kidnapping, violations of R.C. 2905.01(A)(4), and a single count of aggravated burglary, a violation of R.C. 2911.01(A)(1). All of the counts contained firearm specifications pursuant to R.C. 2941.141.
The matter was tried before a jury on January 7, 1993, at which time appellant represented himself. At the conclusion of the trial, a jury found appellant guilty on all counts and specifications. Appellant then appealed the matter to this court, where we reversed and remanded because the record failed to substantiate that appellant had made a knowing and intelligent election to proceed pro se. See State v. Bettem
(Aug. 30, 1995), Belmont App. No. 93-B-6, unreported, (hereinafter Bettem 1).
On remand, appellant was retried on May 21, 1996. The testimony presented at trial presented two versions of the events in question. Appellant's girlfriend Meralin Crane testified that she and her friend Carol Zuboski were at the latter's house on August 15, 1992 when appellant turned up. Crane stated that appellant used a gun to force the two women and the five children present in the house at the time to submit to his wishes. According to Crane, appellant made the five children get into a closet in the bedroom and he placed a nightstand and some fans against the closet doors. Appellant then tied Crane's and Zuboski's hands with duct tape and performed various sexual acts upon them before leaving the house. Crane also stated that appellant threatened to kill the children if the two women did not perform as instructed.
Appellant, testifying in his own defense, conceded that he had been in the house with the gun and that some sexual activity had occurred, but testified that all of the events were in accordance with a plan previously devised by Crane. Appellant claimed that Crane and Zuboski had placed the children in the closet and that at a certain point, Zuboski had had a change of heart, and, concerned that her husband would discover her indiscretion, she threatened to call the police. At that time, appellant testified that he taped the womens' ankles together and told them he would kill himself rather than face incarceration. This time a jury found appellant not guilty on the counts of felonious sexual penetration and aggravated burglary but guilty on the count of rape and the seven counts of kidnapping.
Based on the verdict, the trial court sentenced appellant to not less than ten years nor more than twenty-five years for each of the counts of kidnapping and the count of rape, plus an additional three-year term for the firearm specification. In addition, the trial court ordered all terms to be served consecutively for a total of not less than eighty-three years nor more than two-hundred and three years, which was journalized on June 6, 1996.
On June 7, 1996, appellant filed a motion for a new trial, which appellant characterized as a motion for imposition of correct sentences. In the motion, appellant argued that the convictions for the rape and kidnapping of victim Zuboski were allied offenses of similar import, and that the facts at trial on the kidnapping counts could only support aggravated felonies of the second degree rather than of the first degree because appellant had released the victims in a safe place unharmed pursuant to R.C. 2905.01(C). On July 3, 1996, the trial court overruled appellant's motion and on August 2, 1996 appellant filed this timely appeal from the conviction and sentence entered on June 6, 1997 and from the denial of the motion for a new trial entered on July 3, 1997.
Appellant's first assignment of error states:
 "THE PROSECUTOR COMMITTED MISCONDUCT DURING HIS CLOSING ARGUMENT CAUSING APPELLANT TO BE DEPRIVED OF HIS DUE PROCESS RIGHTS AS SECURED BY THE UNITED STATES AND OHIO CONSTITUTIONS."
Appellant argues that throughout his closing argument, the prosecutor, Frank Pierce, made various inflammatory comments and statements which collectively denied appellant a fair trial. Specifically, appellant makes three arguments under this assignment of error, the first of which is that the prosecutor improperly expressed his personal belief or opinion as to the credibility of a witness.
According to appellant, the prosecutor vouched for the credibility of one of the witnesses, Jessica Lenz, in the following manner:
 "* * * It is the height of audacity to ask you to believe that that girl, the stranger, the neighbor girl somehow participated in a conspiracy to falsely accuse some guy who didn't want to participate in a sex fantasy or whatever their theory is which I find so hard to believe, it's actually hard to listen to try to make sense of." (Tr. 527-528)
Appellant also argues that the prosecutor expressed his personal disbelief of appellant's testimony with the following remarks:
 "* * * [W]e come to the star witness, and I call Mr. Bettem not only the star witness for the defense but the star witness for the prosecution. We finally come down to Mr. Bettem's utterly fantastic, unbelievably insulting story. * * *" (Tr. 531)
* * *
 "Now, the first thing he told you (sic.) when you got on the witness stand was my attorneys don't want me to testify. Well, I think we now know why. Because you would see through that transparent, crazy, fantastic lie he told. Let's think about that. I mean, for the sex game theory to be true, each woman has to be a sex maniac and be attracted to him. * * *" (Tr. 549)
* * *
 "* * * There is nothing in the constitution that says you're required to believe a fantastic lie even if a criminal defendant tells it under oath. * * * God help our country if you believe what Lee Bettem says. If you think the constitution requires to you (sic.) believe that." (Tr. 551)
Although counsel for appellant failed to object to these comments, appellant cites Snyder v. Stanford (1988), 15 Ohio St.2d 31, and State v. Carter (1972), 30 Ohio App.2d 115, for the notion that a trial court must intervene if counsel abuses his privilege during closing arguments. In any event, appellant claims that the misconduct of the prosecutor was plain error.
Appellant's second argument is that the prosecutor characterized the defense in derogatory terms designed to sway the jury into thinking appellant was being deceitful. In support of this argument, appellant points to the prosecutor's following remarks:
 "[MR. PIERCE:] Even Mr. Dehus said, you know, well there is some physical evidence left but they didn't ask me to do anything with it. I guess the implication you can draw from that is well maybe they don't think the physical evidence would exonerate the defendant. They have as much right to the evidence as we do.
 "MR. McHENRY: Your Honor, I object to this line of argument. It's improper.
 "THE COURT: The objection is overruled. I want the argument to stop at this point.
 "MR. PIERCE: Okay. Finally, again just to make clear, who cares about the crime scene? It's not like we don't know who was there having sex. We have that person. He's admitted it under oath. So all the crime scene testimony has suddenly become irrelevant." (Tr. 530)
* * *
 "[MR. PIERCE:] You know, how do you think rapists were convicted back in the old days?
"MR. McHENRY: Objection.
 "MR. PIERCE: Before there was laboratory evidence.
"THE COURT: Overruled.
 "MR. PIERCE: You know, evidence is more than physical evidence. When the defense attorney says evidence, he keeps referring to this table here. The evidence is right there. The evidence is the testimony. What if the house burned down? What if he set it on fire after he left and there wasn't any physical evidence?
"MR. McHENRY: Objection.
"THE COURT: Overruled.
 "MR. PIERCE: Do you think that would make Carol Zuboski and Meralin Crane liars? What the defense has been able to do is to take the criminal investigation and twist and turn it around so now it's not State against Lee Bettem, it's State against Rusty Patt.
 "Now, you might want to give Rusty about a C minus on his investigation but what grade are you going to give Lee Bettem for what he did to those girls? There is no middle ground. * * *" (Tr. 548)
* * *
 "[MR. PIERCE:] You know, ladies and gentlemen, the reasonable doubt is a doubt based on reason and common sense. The prisons are filled with people who have been convicted.
"MR. McHENRY: Objection.
"MR. PIERCE: Beyond a reasonable doubt.
"THE COURT: Overruled.
 "MR. PIERCE: Defense attorney makes it sound like there is no possible way, that there is no possible way that anybody could ever be proved guilty beyond a reasonable doubt. * * *" (Tr. 550-551)
According to appellant, these excerpts constitute an attempt by the prosecutor to implant in the jury's mind the notion that counsel for appellant were convinced of appellant's guilt but were using trickery to persuade the jury to acquit appellant.
Appellant's third argument under this assignment of error is that the prosecutor went beyond the evidence in the record and made assertions calculated to mislead or sway the jury. In support of this argument, appellant offers the following additional passage from the closing argument of the prosecutor:
 "[MR. PIERCE:] And then, of course, the other witnesses were that the defendant called some character witness. You know, we could all get character witnesses. There's never been a defendant who couldn't find a character witness somewhere. I am sure the greatest mass murderers in history could find a character witness.
"MR. McHENRY: Objection, Your Honor.
"THE COURT: Sustained. Disregard the remark.
 "MR. PIERCE: You are not going to be to find a defendant who can't come up with somebody who likes him. But none of the character witnesses testified to anything we would really like to hear about the defendant's character, things like how did he come to leave his employment as a policeman in South Carolina. There is a lot of things about the defendant's character that might have been useful for us to hear that we didn't hear. * * *" (Tr. 530-531)
According to appellant this remark, and the passages previously noted, indicate that the prosecutor went beyond the evidence and encouraged the jury to convict appellant based on passion and on a duty to society rather than based on the facts. In conclusion, appellant argues that the prosecutor's remarks throughout his closing argument were egregious, improper and prejudicially affected appellant's right to a fair trial.
The test for prosecutorial misconduct in closing argument is whether the remarks were improper and if so whether they prejudicially affected substantial rights of the accused.State v. White (1998), 82 Ohio St.3d 16, 22. A prosecutor is afforded wide latitude in closing arguments. See State v.Braxton (1995), 102 Ohio App.3d 28, 42. However, prosecutors must avoid insinuations and assertions calculated to mislead.State v. Lott (1990), 51 Ohio St.3d 160, 166. "They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." Id.
Notwithstanding the limits placed on prosecutors' closing statements, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips
(1982), 455 U.S. 209, 219. The effect of counsel's misconduct must be considered in light of the whole record. See State v.Bush (1994), 97 Ohio App.3d 20, 28. An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly tried case. See Braxton, supra, at 41.
Moreover, when a defendant fails to object to a prosecutor's comments at trial, a reviewing court cannot reverse the conviction unless the comments rise to the level of plain error. See State v. Tumbleson (1995), 105 Ohio App.3d 693, 700. Prosecutorial misconduct is plain error if it is clear that the defendant would not have been convicted in the absence of the improper comments. See Id.
Based on our review of the entire record, we find that the prosecutor improperly expressed his opinion on the credibility of appellant and his defense theory. Indeed, several of the comments cited by appellant were hard and unfair blows struck by the prosecution, which this court does not condone. However, we must consider the effect the misconduct had on the jury in the context of the entire trial. See State v. Keenan (1993),66 Ohio St.3d 402, 410. We believe, beyond any reasonable doubt, that appellant would have been convicted in the absence of the prosecutor's remarks. The prosecutor's remarks were an isolated event in an otherwise properly tried case. Unlike in Keenan,supra, the evidence of guilt in the present case was more than sufficient to support appellant's conviction. In light of the evidence adduced at trial, there is no reason to believe that appellant's substantial rights were materially prejudiced by the prosecutor's remarks. Thus, although we must caution the Belmont County Prosecutor's Office against jeopardizing criminal convictions with unnecessary and improper conduct during closing argument, we find no grounds for reversal in the instant case.
Appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DURING HIS CRIMINAL TRIAL IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
Appellant argues that he did not receive effective assistance from his trial counsel. Most of the instances appellant points to appear to be potential avenues of inquiry that counsel for appellant opted not to pursue. In addition, appellant points to counsel's failure to have physical evidence tested and the failure to object to the prosecutor's improper remarks referred to in appellant's first assignment of error.
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. See State v. Sallie
(1998), 81 Ohio St.3d 673, 674. A defendant must show that counsel acted unreasonably and that but for counsel's errors, there exists a reasonable probability that the result of the trial would have been different. See Id.
"Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel."State v. Carter (1995), 72 Ohio St.3d 545, 558. Rather, trial counsel is entitled to a strong presumption that all decisions fell within the wide range of reasonable, professional assistance. See Sallie, supra, at 675.
Our review of the instances set forth by appellant do not indicate that appellant was denied effective assistance of counsel. Although counsel should have objected to the prosecutor's remarks during closing arguments, as we have already noted, appellant was not prejudiced by counsel's failure to do so. In all other respects, counsel presented a strong, vigorous and thorough defense. Our review of the record indicates that any errors on the part of appellant's counsel were not prejudicial to appellant, and we find no reasonable probability that in their absence the outcome would have been any different.
Appellant's second assignment of error is without merit.
Appellant's third assignment of error states:
 "THE JURY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE."
Weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. SeeState v. Thompkins (1997), 78 Ohio St.3d 380, 387. In reviewing a weight of the evidence claim, a reviewing court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. (citing State v. Martin [1983],20 Ohio App.3d 172, 175). The judgment of the trier of fact will not be disturbed on appeal if the reviewing court determines that reasonable minds could arrive at the conclusion reached by the fact finder. See State v. Jenks (1991), 61 Ohio St.3d 259,273.
Both Crane and Zuboski testified that appellant forced them into a bedroom, bound their hands with duct tape, forced the children into a closet, and then proceeded to engage in sexual acts with the two women. Appellant corroborated much of the victims' testimony but testified that the events were done in furtherance of a planned sexual escapade on the part of Crane. The jury apparently decided that the victims' account was more credible than that of appellant, and nothing in the record indicates to us that in doing so the jury lost its way.
Appellant makes much of the fact that many of the victims' statements were unsupported by any physical evidence. The record indicates that counsel for appellant effectively cross-examined the victims, the investigating officer, and the forensic scientist that performed chemical tests on the various pieces of evidence. The jury apparently resolved the conflicting evidence in favor of appellee and we cannot say that in so doing the jury created such a manifest miscarriage of justice that the conviction must be reversed.
Appellant's third assignment of error is without merit.
Appellant's fourth assignment of error states:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY SENTENCING APPELLANT FOR BOTH THE RAPE AND KIDNAPPING OF ZUBOSKI IN VIOLATION OF THE ALLIED OFFENSES OF SIMILAR IMPORT STATUTE."
Appellant's argument is that the kidnapping and rape charges against Zuboski are allied offenses of similar import in violation of R.C. 2941.25.
R.C. 2941.25 states:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
In State v. Moss (1982), 69 Ohio St.2d 515, 519, the Supreme Court of Ohio held that R.C. 2941.25 had:
 "authorized trial courts, in a single criminal proceeding, to convict and to sentence a defendant for two or more offenses, having as their genesis the same criminal conduct or transaction, provided that the offenses (1) were not allied and of similar import, (2) were committed separately or (3) were committed with a separate animus as to each offense."
Offenses are of similar import when their elements correspond to such a degree that commission of one offense constitutes commission of the other offense. See State v. Reynolds (1998),80 Ohio St.3d 870. In State v. Blankenship (1988), 38 Ohio St.3d 116,117, the Ohio Supreme Court set forth the following two-step test for determining whether offenses are of similar import:
 "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. * * *" (Citations omitted.) (Emphasis sic.)
Whether multiple offenses are allied offenses of similar import depends upon the facts and circumstances in each case.State v. Kent (1980), 68 Ohio App.2d 151, 154.
We note that this issue was raised by appellant in his motion for a new trial, and that this court has previously decided this same issue in appellant's first appeal, see Bettem 1, wherein we found that appellant had restrained Zuboski with a separate animus after completing his rape of her. However, because appellant was afforded a new trial, we must begin our inquiry anew. Having said that, we note the following testimony from the instant case:
 "Q. [Prosecutor]: Did he [appellant] say what his future plans were?
 "A. [Zuboski] He said, 'It's 6:20 right now.' He says, "Don't try to leave this room until 7:20. I'm going out into the living room and relax or blow my brains away, and if I hear any noise in here, I will come in here and I will blow all your brains away, including the children." (Tr. 200-201)
We find this sufficient evidence of an animus on the part of appellant to restrain the liberty of his victim Zuboski separate and apart from the already completed rape, which permitted conviction for both offenses.
Appellant's fourth assignment of error is without merit.
Appellant's fifth assignment of error states:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY SENTENCING APPELLANT ON THE KIDNAPPING COUNTS AS AGGRAVATED FELONIES OF THE FIRST DEGREE WHERE THE KIDNAPPING COUNTS CONSTITUTED AGGRAVATED FELONIES OF THE SECOND DEGREE."
Appellant argues that pursuant to R.C. 2905.01(C), kidnapping is an aggravated felony of the second degree where the victim is released in a safe place unharmed. In order to be sentenced for this lower offense, the evidence must show that: 1) the victims were released; 2) in a safe place; 3) unharmed. SeeState v. Richardson (Feb. 27, 1982), Columbiana App. No. 81-C-33, unreported. There was no evidence at trial indicating that appellant released his victims. Rather, the victims managed to escape through a window by their own efforts. Hence, the evidence fully supports appellant's conviction of seven counts of kidnapping, aggravated felonies of the first degree, as charged in the indictment.
Appellant's fifth assignment of error is without merit.
Appellant's sixth and final assignment of error states:
 "APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL BY THE CUMULATIVE AFFECT (sic.) OF ERRORS OCCURRING AT TRIAL IN CONTRAVENTION OF THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."
In light of the fact that we find no merit to any of the assignments of error raised by appellant, this argument is similarly without merit.
The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs
APPROVED:
 ---------------------- Gene Donofrio Presiding Judge