OPINION
Jimmie Brown was found guilty of felony murder [R.C. 2903.02(B)] and aggravated arson by a jury in the Montgomery County Court of Common Pleas. The trial court sentenced Brown to fifteen years to life imprisonment on the murder charge and ten years on the aggravated arson charge and ordered that the two sentences be served consecutively. Brown appeals from this conviction, raising two assignments of error.
The state's evidence established the following facts.
On June 5, 1999, Brown bought a Ford Escort from a friend, Connie Back, for $275. Back testified at trial that she had cleaned out the car before giving it to Brown and that she had not smelled gasoline in the car or been aware of a gas leak problem with the car. Later that day, Brown gave a ride to another friend, Shaundale Allen, who testified that he had seen a plastic gas can on the floor of the car. Brown and Allen went to a gas station and put $5 of gasoline in the car. Afterwards, Brown took Allen home.
Brown was next seen between the hours of 2:00 and 3:00 in the morning on June 6, 1999 when he was videotaped buying potato chips at a Sunoco station in Middletown. At 3:13 the same morning, the Ford Escort was seen by a police officer in the parking lot of the Shawnee Lounge in German Township. The officer reported the vehicle as a suspicious vehicle and later testified to having seen the driver, Brown, in the car. Another police officer, Officer Joseph Andzik was dispatched to the scene but found no vehicle when he arrived at approximately 3:16. At approximately 3:30 that morning, Andzik was dispatched to 8930 Rees Street on a report of a burned woman. He arrived to find a car on fire on Sugar Street, which intersects with Rees Street, and to find Kimberly Hogue, who was severely burned.
Several witnesses testified to the events following the fire in which Hogue was burned. Todd Campbell testified that he was awakened by a loud scream at approximately 3:00 in the morning and looked out the window to see a fire on Sugar Street. When he went to his back door, he observed Brown and a black female (Hogue). Brown told Campbell that Hogue, his fiance, had been burned and that his car was on fire. Hogue sat on Campbell's porch. He testified that she had been wearing a bra and shorts, that she had been burned on her back and legs, and that her flesh had been peeling off her body. Brown called 911, and other people began arriving at Campbell's porch.
Among the people who arrived at the scene were Toni Millar and her husband. They had been riding motorcycles with friends and saw the Ford Escort on fire. Millar testified that the inside of the car had been on fire in the front seat and that the fire had been spreading toward the back seat. Millar further testified that the windows on both the driver's and passenger's sides of the car had been open. She and her companions went to call 911 and saw Brown running toward them yelling that Hogue was "all fucked up." When they approached Campbell's house, they saw Hogue sitting on the porch. Millar testified that Hogue was "burnt from the top of her head down to her knees, and into, and around her knee area so badly that the skin was just dripping off her body." According to Millar, the pigmentation had been burned off of Hogue's body, and her bra was melted into her breasts. Millar procured a sheet to cover Hogue after refusing to cover Hogue in a shirt offered by Brown because it smelled of gasoline. When she asked Brown what had happened, he told her that the car had been leaking gas and had caught fire when he had lit a cigarette. Millar further testified that, when asked by a police officer, Brown had stated that he had smelled gas and that the car had exploded when he had lit a cigarette. At this point, Hogue had stated, "Don't start lying now." Brown had responded, "What are you talking about?," and Hogue had answered, "You know." Brown also told police that he had pulled Hogue out of the car.
When Officer Andzik arrived at the scene, the car was completely engulfed in flames. He saw two women helping Hogue, and he was told by Brown that a gas leak had caused the car to ignite when he lit a cigarette. Brown further explained to Andzik that he had received burns to his hands when pulling Hogue from the car. After Andzik spoke to Brown, both he and Hogue were taken away by ambulance. Brown went primarily to accompany Hogue as he was barely injured himself. On the way to the hospital, Brown repeatedly told Hogue, "I'm sorry, baby." At the hospital, Hogue's nurse, Veronica Miller noted that Hogue's clothing, which had to be cut from her body, smelled like gasoline. Miller also noted a gasoline smell on Hogue.
Andzik remained at the scene and photographed the area. He noted that there were no skid marks on the road, that the passenger seat of the car was slightly reclined, and that the parking brake was on in the car. Andzik was also given a piece of paper towel smelling like gasoline that Campbell had discovered on his sidewalk. The paper towel had originally been seen inside Hogue's bra. Two members of the Regional Fire Investigation Unit determined that the fire began in the front passenger area of the car, but not on the floorboard. They found no gasoline container. They determined that the cause of the fire had been arson and that an open flame had been used to ignite gasoline. Furthermore, they determined that the fire had not been caused by a cigarette or explosion.
The evidence recovered by the police was tested by Michael Wathen of the Miami Valley Regional Crime Lab. He determined that Hogue's clothing, shoe, and the sheet that was used to cover her all contained gasoline, as did Brown's tennis shoes and samples from the vehicle. Brown's jean shorts and shirt and the paper towel all tested negative for gasoline. It was also determined that the burns received by Hogue were consistent with burns caused by a gasoline fire.
Hogue died as a result of her injuries on June 12, 1999. At trial, Shaundale Allen testified that Brown had stated a few weeks before Hogue was killed that he "loved [Hogue] to death[, b]ut he knew that it was going to end up being his downfall" and that he "probably was going to end up killing [Hogue]."
On November 30, 1999, a Montgomery County Grand Jury indicted Brown on one count of murder and one count of aggravated arson. Brown filed a motion to suppress, which the trial court overruled on June 20, 2000. On November 22, 2000, a jury convicted Brown of both counts. On November 29, the trial court sentenced Brown to fifteen years to life imprisonment on the murder charge and to the maximum sentence of ten years on the arson charge and ordered that the sentences be served consecutively.
Brown raises two assignments of error.
 I. THE TRIAL COURT ERRED IN IMPOSING SEPARATE SENTENCES FOR FELONY MURDER AND THE UNDERLYING FELONY.
Under this assignment of error, Brown argues that the trial court violated the Double Jeopardy Clause of the United States Constitution by sentencing him to cumulative punishments for felony murder and the underlying felony of aggravated arson. Both parties agree that the applicable standard in Ohio is that set forth in State v. Rance (1999),85 Ohio St.3d 632.
The Double Jeopardy Clause prohibits cumulative punishments for the same offense. See Rance, 85 Ohio St.3d at 634, citing State v. Moss (1982), 69 Ohio St.2d 515. 518. The traditional test for determining whether two offenses are the same is set forth in the United States Supreme Court case of Blockburger v. United States (1932), 284 U.S. 299,304, 52 S.Ct. 180, 182, and looks to "whether each offense requires proof of an element that the other does not." Rance, 85 Ohio St.3d at 634-35, citing Blockburger, supra. However, a legislature "may prescribe the imposition of cumulative punishments for crimes that constitute the same offense under Blockburger without violating the federal protection against double jeopardy." Id., 85 Ohio St.3d at 635, citing Albernaz v. United States (1981), 450 U.S. 333, 344, 101 S.Ct. 1137, 1145. Thus, "[t]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Id., 85 Ohio St.3d at 635, quoting Missouri v. Hunter (1983), 459 U.S. 359,366, 103 S.Ct. 673, 678. Therefore, our task is to determine whether the General Assembly intended to allow cumulative punishments for felony murder and the underlying felony. See id., 85 Ohio St.3d at 635.
R.C. 2941.25, Ohio's multiple count statute, provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
The test for deciding whether two offenses are "allied crimes of similar import" is set forth in Rance: "If the elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import." Rance, 85 Ohio St.3d at 636 (internal quotation marks omitted), quoting State v. Jones (1997), 78 Ohio St.3d 12, 13-14. Furthermore, when applying this test, courts should review the statutory elements of the two offenses in the abstract. See id., 85 Ohio St.3d at 636 (overruling Newark v. Vazirani (1990), 48 Ohio St.3d 81. 83, which held to the contrary).
In Rance, the supreme court looked at the offenses of involuntary manslaughter and aggravated robbery. Noting that federal cases applying Blockburger were helpful in examining Ohio law, the Rance court cited to the United States Supreme Court case of Whalen v. United States (1980),445 U.S. 684, 100 S.Ct. 1432. Id., 85 Ohio St.3d at 636-37. In the majority opinion, the Whalen court stated that:
 Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape, since it is plainly not the case that "each provision requires proof of a fact which the other does not." A conviction for a killing in the course of a rape cannot be had without proving all the elements of the offense of rape.
Whalen, 100 S.Ct. at 1439. However, the Rance court rejected this reasoning, relying instead on the dissenting opinion of Justice Rehnquist, in which he stated: "[O]ne can see that rape is not a lesser included offense of felony murder, because proof of the latter will not necessarily require proof of the former. One can commit felony murder without rape and one can rape without committing felony murder." Rance,85 Ohio St.3d at 637, quoting Whalen, 100 S.Ct. at 1447 (Rehnquist, J., dissenting). Thus, the Rance court found that involuntary manslaughter and aggravated robbery are not allied offenses of similar import. Id.,85 Ohio St.3d at 639.
Because the involuntary manslaughter offense in Rance was actually predicated on felonious assault, not the aggravated robbery, that case is distinguishable from the case sub judice, in which the felony murder is predicated on the second offense for which Brown was sentenced. See Rance, 85 Ohio St.3d at 636 n. 1. However, the Rance court noted that, because both the aggravated robbery and the involuntary manslaughter offenses were the result of a single assault, Justice Rehnquist's reasoning applied. See id.
In the present case, we must determine, applying the principles of Rance, whether felony murder and the underlying offense of aggravated arson are allied offenses of similar import. Given the Rance court's adoption of Justice Rehnquist's dissenting opinion in Whalen, we must find that they are not. Aggravated arson as it applies in this case requires that the defendant, knowingly, "by means of fire or explosion * * * [c]reate a substantial risk of serious physical harm to any person other than [himself]." R.C. 2909.02(A)(1). Felony murder requires that the defendant "cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." R.C. 2903.02. Looked at in the most abstract light, these two offenses are not allied offenses of similar import. Aggravated arson can be committed without a killing, and felony murder can be committed by means of a first or second degree felony other than aggravated arson. Furthermore, the Supreme Court of Ohio has held that aggravated murder committed in the course of aggravated arson and aggravated arson are not allied offenses of similar import:
 When the elements are compared, aggravated murder and aggravated arson are not allied offenses of similar import within the meaning of R.C. 2941.25. Aggravated murder requires purposefully causing the death of another while committing one of nine specified felonies, of which aggravated arson is only one. Moreover, aggravated arson does not require a purposeful killing; instead, it requires a substantial risk of physical harm by fire or explosion. Thus, "[t]he two offenses are not prerequisites, one for the other. To consummate either offense, the other need not by definition be committed."
State v. Richey (1992), 64 Ohio St.3d 353, 369, citing State v. Moss (1982), 69 Ohio St.2d 515. 520. While that case is distinguishable factually because it involved the burning of a residence with people inside while this case involves the actual burning of a person, the court's analysis applies in this case. Therefore, we find that felony murder and aggravated arson are not allied offenses of similar import such that sentencing Brown for both offenses violated his constitutional protection against double jeopardy. Accordingly, the trial court did not err in imposing separate sentences for felony murder and the underlying felony.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE FOR THE OFFENSE OF AGGRAVATED ARSON.
Under this assignment of error, Brown argues that, under Apprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348, he was entitled to a jury determination of whether he had committed "the worst form of the offense" before the trial court could impose the maximum sentence on the aggravated arson charge.
R.C. 2929.14(C) provides that a trial court may impose the maximum sentence:
 [O]nly upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
The trial court sentenced Brown to ten years imprisonment, the maximum sentence, on the aggravated arson charge because it found that Brown committed the worst form of the offense. Brown now argues that, under Apprendi, he was entitled to have the jury determine whether he committed the worst form of the offense.
The argument could be made that this case involved the burning of a car with a person inside and is therefore analogous to the facts in Richey. However, Brown argues, and the state does not appear to disagree, that this case involved actually setting fire to the victim rather than the residence (or vehicle) containing the victim. Since the parties seem to agree that this is the appropriate reading of the facts, we will assume for the purpose of our analysis that it is correct.
In Apprendi, the United States Supreme Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi,120 S.Ct. at 2362-63. Apprendi involved a New Jersey statute that permitted the trial court to increase the maximum sentence from ten to twenty years if the crime was motivated by the race of the victim. Id. at 2351. Thus, the Court held in that case that the defendant was entitled to a jury determination of the factual issue of whether his crime was motivated by race. See id. at 2362-63. The Court phrased the appropriate inquiry as whether "the required finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict." Id. at 2365.
The present case is clearly distinguishable from Apprendi. In Brown's case, the trial court did not impose a sentence "beyond the prescribed statutory maximum" but rather imposed precisely the statutory maximum. See State v. Gambrel (Feb. 2, 2001), Miami App. No. 2000-CA-29, unreported (an opinion discussing Apprendi in the contexts of maximum and consecutive sentences and noting that imposition of the statutory maximum sentence does not expose the defendant to a greater punishment than was authorized by the jury's verdict and stating as an example that "any defendant in Ohio who commits a first degree felony risks being sentenced to a maximum of ten years in prison"). Therefore, Brown was not entitled to a jury determination on whether he committed the worst form of aggravated arson.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.