[Cite as *State v. Armstrong*, 2011-Ohio-6265.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100509 |
| | | TRIAL NO. B-0905357 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| TIMOTHY ARMSTRONG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed as Modified

Date of Judgment Entry on Appeal:  December 9, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**SUNDERMANN, Judge.**

{¶1}    Timothy Armstrong appeals his convictions for one count of kidnapping, three counts of rape, and two counts of gross sexual imposition. Because we conclude that the trial court erred when it sentenced Armstrong to life imprisonment for kidnapping, we modify the sentence to an indefinite term of 15 years to life imprisonment. In all other respects, we affirm the judgment of the trial court.

{¶2}    Armstrong was indicted for one count of kidnapping, four counts of rape, and two counts of gross sexual imposition. All of the offenses involved a girl who was seven years old at the time of the alleged offenses. Prior to a trial before a jury, the trial court conducted a hearing to determine whether the victim, K.C., was competent to testify at trial. The court concluded that she was. The state later moved that K.C. be permitted to testify via closed-circuit television outside the presence of Armstrong. The trial court granted the state's motion.

{¶3}    The case proceeded to trial. During the first jury trial, the trial court declared a mistrial due to the prejudicial testimony of one of the state's witnesses. A second jury trial began in June 2010.

{¶4}    K.C. testified that she had been playing in her backyard when Armstrong, who lived next door, asked her if she wanted to come into his backyard to play with his dogs and cats. Armstrong lifted her from her backyard into his backyard. According to K.C., Armstrong took pictures of her with his cellular telephone and eventually made her a sandwich in his house. K.C. testified that she had eaten the sandwich in Armstrong's bedroom. While she was in his bedroom, Armstrong had turned on a "gross movie" in which "people were licking private parts

and [were] naked." Armstrong then told K.C. to remove her pants and underwear and get under the blanket on his bed. Armstrong removed his clothes and got under the blanket with K.C. At trial, K.C. described multiple acts of oral sex, digital penetration, and vaginal penetration by Armstrong. According to K.C.'s testimony, Armstrong had told her to urinate in a trash can so that his mother, who was napping in the house, would not know that K.C. was in the house. K.C. testified that she had heard her father calling for her from her family's backyard, but that Armstrong had told her not to tell what had happened and to stay in his room.

{¶5}   K.C.'s father, J.L., testified that he and his wife and K.C. lived next door to Armstrong. According to J.L., while he was at work on August 1, 2009, he had spoken with his wife who told him that his daughter was missing. J.L. rushed home to look for his daughter. When he had learned that K.C. had last been seen in Armstrong's yard, he had banged on Armstrong's door, asking for his daughter. Armstrong had replied that the girl was not in his house and had suggested that she might be in his backyard. When J.L. had run to Armstrong's backyard, he had seen Armstrong leading K.C. out of his back door. K.C. had run to her father who had taken her back to his house. According to J.L., when either his wife or he had asked the victim if Armstrong had removed her clothes, the victim had begun to cry. J.L. had called 911 and had taken the victim to Cincinnati Childrens Hospital.

{¶6}   Linda Smets-Ulrich, a social worker, testified that she had interviewed K.C. in the emergency room at the hospital. According to Smets-Ulrich, K.C. had described acts of oral sex, digital penetration, and vaginal penetration that Armstrong had performed while K.C. was in his bedroom. Dr. Berkeley Bennett, a child-abuse pediatric specialist at Childrens Hospital, testified that he had examined K.C. and had found no physical evidence of sexual abuse. Bennett stated that even

though he had found no physical evidence of abuse, his opinion was that K.C. had been sexually abused.

{¶7} Police officer Jason Boyd testified that he had executed a search warrant at Armstrong's house. During the search pornographic DVDs and videotapes were recovered from Armstrong's bedroom. One of the movies contained scenes that were similar to those described by K.C. Armstrong's cellular telephone was also seized from the house. The cellular telephone contained a video of K.C. that corresponded with her description of the events before she had entered Armstrong's house. Tracy Sundemeier, a serologist in the Hamilton County Coroner's office, testified that she had analyzed evidence that had been recovered from Armstrong's house and from K.C.'s house. Sundemeier testified that she had found the presence of amalyse, which is a component of saliva, in a stain on the underwear that K.C. had been wearing when she returned from Armstrong's house. According to Sundemeier, the main DNA profile of the stain matched the DNA profile of Armstrong.

{¶8} Armstrong testified in his own behalf. According to Armstrong, he had lifted K.C. over into his backyard and had brought her into his house to give her a sandwich. He claimed that he had not shown K.C. a pornographic movie, and that she had not been in his room for more than a minute. He denied having had any sexual contact with K.C.

{¶9} At the conclusion of the trial, the jury found Armstrong guilty of all of the charges, except for rape involving vaginal penetration. Armstrong was acquitted of that charge. Following a sentencing hearing, the trial court sentenced Armstrong to imprisonment for life for the kidnapping count, imprisonment for life without the possibility of parole for each of the three rape counts, and five years for each of the gross-sexual-imposition counts. The sentences were to run concurrently.

### Victim's Testimony

{¶10}   For ease of discussion, we consider the assignments of error in the order that the alleged errors arose in the proceeding.  Armstrong's second and third assignments of error challenge the testimony of K.C.  In the second, he asserts that the trial court erred when it determined that K.C. was competent to testify.  In the third, he asserts that the trial court erred when it allowed K.C. to testify via closed-circuit television outside Armstrong's presence.

{¶11}   Under Ohio law, the competency of witnesses under the age of ten must be established.  Evid.R. 601(A); *State v. Wallace* (1988), 37 Ohio St.3d 87, 94, 524 N.E.2d 466.  "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483, syllabus.  We review the trial court's determination of a witness's competency under an abuse-of-discretion standard.  *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus.

{¶12}   The trial court conducted a voir dire of K.C. prior to trial.  During the voir dire, K.C. was able to answer questions about her age, her school, her favorite teacher, and her favorite book.  She was also able to distinguish between telling the truth and lying.  We are unable to conclude that the trial court abused its discretion when it concluded that K.C. was competent to testify.  The second assignment of error is overruled.

{¶13}   Armstrong also argues that K.C. should not have been permitted to testify via closed-circuit television and that Armstrong should have been permitted to be present during K.C.'s testimony.   Under R.C. 2945.481(C), a prosecutor may request that a child victim testify via closed-circuit television without the defendant in the room.   R.C. 2945.481(E)(3) provides that the trial court may grant the prosecutor's request if it "determines that the child victim is unavailable to testify in the room in the physical presence of the defendant due to * * * [t]he substantial likelihood that the child victim will suffer serious emotional trauma from so testifying."  We will affirm the trial court's determination if its findings are supported by competent, credible evidence.   *State v. Gresham* (Oct. 22, 1999), 1st Dist. No. C-990077, citing *State v. Self* (1990), 56 Ohio St.3d 73, 80, 564 N.E.2d 446.

{¶14}   The trial court conducted a hearing on the prosecutor's motion to allow K.C. to testify via closed-circuit television.   During the hearing, Dr. Frank Putnam, an expert in child and adolescent psychiatry, testified that he had met with K.C. and that, in his opinion, testifying in the presence of Armstrong would be extremely stressful for K.C., potentially disruptive in her healing process, and traumatic for her.   Based on Putnam's testimony and its own interview with K.C., the trial court concluded that K.C. should testify via closed-circuit television.   Having reviewed the record, we conclude that the trial court's determination under R.C. 2945.481(E) was supported by competent, credible evidence, so we overrule Armstrong's third assignment of error.

**Sufficiency and Weight of the Evidence**

{¶15}   Armstrong's next three assignments of error challenge the sufficiency and weight of the evidence of his offenses.   In the fourth, he asserts that his convictions were not supported by sufficient evidence.   In the fifth, he asserts that his

convictions were against the manifest weight of the evidence. And in the sixth, he asserts that the trial court erred when it overruled his Crim.R. 29 motion for an acquittal.

{¶16} The standard of review for a sufficiency claim and for the denial of a Crim.R. 29 motion for an acquittal is the same. When an appellant challenges the sufficiency of the evidence, we must determine whether the state presented adequate evidence on each element of the offense so that a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. See *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. See id. at 387.

{¶17} Armstrong was convicted of kidnapping with a sexual-motivation specification. Under R.C. 2905.01(A)(4), a person is guilty of kidnapping if he "by force, threat, or deception, or, in the case of a victim under the age of thirteen * * *, by any means, [removes] another from the place where the other person is found or [restrains] the liberty of the other person * * * [t]o engage in sexual activity * * * with the victim against the victim's will." We conclude that the state presented sufficient evidence that Armstrong had removed K.C. from her backyard into his backyard, and that he had further persuaded her to enter his house and, later, his bedroom. The state also presented evidence that K.C. was seven years old at the time of the offense, and that Armstrong had taken her into his house to engage in sexual activity against K.C.'s will.

{¶18} Armstrong was also convicted of three counts of rape in violation of R.C. 2907.02(A)(1)(b). According to that statute, a person is guilty of the offense of

rape if he engages in sexual conduct with a person less than 13 years old. In the three counts for which Armstrong was convicted, the state presented sufficient evidence that he had engaged in sexual conduct with K.C., specifically, fellatio, cunnilingus, and digital penetration.

{¶19} R.C. 2907.05(A)(4) provides that a person is guilty of gross sexual imposition if he has "sexual contact with another, not the spouse of the offender" or causes "another, not the spouse of the offender, to have sexual contact with the offender" when "[t]he other person * * * is less than thirteen years of age[.]" Sexual contact is defined as "touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). With respect to the two gross-sexual-imposition counts, the state presented sufficient evidence that Armstrong had touched or rubbed K.C.'s vagina and buttocks and that he had caused her to touch his penis. We conclude that the state presented sufficient evidence of all of the elements of the offenses for which Armstrong was convicted.

{¶20} And having reviewed the record, we are unable to conclude that the jury lost its way when it found him guilty of three counts of rape, two counts of gross sexual imposition, and one count of kidnapping. The jury was in the best position to determine the credibility of the witnesses. The fourth, fifth, and sixth assignments of error are overruled.

**Sentencing Issues**

{¶21} The first assignment of error asserts that the trial court erred when it sentenced Armstrong to life imprisonment without the possibility of parole for the rape offenses. Armstrong contends that the trial court had no authority to sentence

8

him to life imprisonment without the possibility of parole because the jury did not separately find that K.C. was under the age of ten when the offenses occurred.

{¶22} Armstrong was found guilty of R.C. 2907.02(A)(1)(b), which is a first-degree felony. The basic prison term for a first-degree felony is a definite term within the range of five to ten years. R.C. 2929.14(A)(1). But R.C. 2907.02(B) provides that an offender under R.C. 2907.02(A)(1)(b) shall be sentenced to a term of life imprisonment, unless other exceptions in R.C. 2907.02(B) apply. One of the exceptions in the subsection applies if the victim is less than ten years old. In that case, the court may impose a sentence of life without parole. We note that contrary to Armstrong's assertion that the victim's age is an additional aggravating factor under R.C. 2971.03, which provides for sentencing of a sexually violent offender with a predator specification, R.C. 2907.02(B) provides that the trial court's discretion to sentence an offender to a term of life without parole is "in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code."

{¶23} Armstrong likens this case to *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, in which the Ohio Supreme Court held that "a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." Id., syllabus. But *Pelfrey* is inapposite to the case before us. The age of the victim in this case did not change the degree of the offenses of which Armstrong was convicted. He was convicted of first-degree felony offenses.

{¶24} In the indictment, each count of rape alleged that K.C. was less than ten years old at the time of the offense. The evidence that K.C. was seven years old

when the offenses occurred was unchallenged at trial. And for each rape count, the jury was instructed, "Before you can find the defendant guilty of Rape, you must find beyond a reasonable doubt that on or about the 1st day of August 2009, and in Hamilton County, Ohio, the defendant, TIMOTHY J. ARMSTRONG, purposefully engaged in sexual conduct * * * with [K.C.], who was not the spouse of TIMOTHY J. ARMSTRONG, and [K.C.] was less than thirteen years of age, whether or not the defendant knew the age of the victim, and the victim was less than ten years of age in violation of Section 2907.02(A)(1)(b) of the Ohio Revised Code." The age of the victim was not a specification for which the jury needed to make a separate finding. It was within the trial court's discretion to sentence Armstrong to life without the possibility of parole for the rape offenses. The first assignment of error is overruled.

{¶25} Armstrong asserts in the seventh assignment of error that the sentence imposed by the trial court amounted to an abuse of discretion. Armstrong contends that the court should have sentenced him to 15 years to life for kidnapping. We agree.

{¶26} R.C. 2905.01(C)(3)(a) provides that if a defendant is found guilty of kidnapping under R.C. 2905.01 and of a sexual-motivation specification, and if the victim is less than 13 years old, the defendant shall be sentenced "to an indefinite term consisting of a minimum term of fifteen years and maximum term of life imprisonment." Here, the trial court improperly sentenced Armstrong to life imprisonment. We conclude that the sentence imposed for kidnapping was contrary to law. See R.C. 2953.08(A)(4). The seventh assignment of error is sustained.

{¶27} The final assignment of error is that the trial court erred when it sentenced Armstrong separately on the six offenses. Armstrong argues that the trial court should not have convicted him of all of the offenses because they were all allied

offenses of similar import. Under R.C. 2941.25, a trial court, in a single proceeding, may convict and sentence a defendant for two or more offenses " 'having as their genesis the same criminal conduct or transaction,' " if the offenses (1) are not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892, quoting *State v. Moss* (1982), 69 Ohio St.2d 515, 433 N.E.2d 181.

{¶28} The analysis required to determine whether two or more offenses are allied offenses of similar import is an evolving one. Prior to the Ohio Supreme Court's recent decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, courts were to compare the elements of the offenses in the abstract to determine whether the elements corresponded to such a degree that the commission of one offense would result in the commission of the other. See *State v. Rance*, 85 Ohio St.3d 632, 636, 1999-Ohio-291, 710 N.E.2d 699. In *Johnson*, the Ohio Supreme Court overruled *Rance* and held that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson*, supra, syllabus. "Consequently, if the evidence adduced at trial reveals that the state relied upon the same conduct to support the two offenses and that the offenses were committed neither separately nor with a separate animus as to each, then the defendant is afforded the protection of R.C. 2941.25, and the trial court errs in imposing separate sentences for the offenses." *State v. Johnson*, 1st Dist. No. C-090620, 2011-Ohio-3143.

{¶29} We first consider whether the rape offenses were allied offenses of similar import. Armstrong was found guilty of three counts of rape in violation of the same statutory subsection, R.C. 2907.02(A)(1)(b). The counts alleged that

11

Armstrong had engaged in sexual conduct with K.C. by means of fellatio, cunnilingus, and "insertion [of], however slight, any part of the body or any instrument, apparatus, or other object into the vaginal * * * cavity." The evidence that was presented at trial was that each act involved a distinct, different sexual activity. See R.C. 2907.01(A). Thus, they were separate offenses for merger purposes. See *State v. Strong*, 1st Dist. Nos. C-100484 and C-100486, 2011-Ohio-4947. The trial court did not err when it refused to merge the rape counts.

{¶30} Similarly, the gross-sexual-imposition counts were based on separate acts of sexual contact by Armstrong. One alleged that Armstrong had had sexual contact with K.C., and the other alleged that he had caused her to have sexual contact with him. The evidence at trial demonstrated separate incidences of gross sexual imposition. K.C. testified that Armstrong had rubbed her buttocks and her vagina, and that he had told her to touch his penis. We conclude that the trial court did not err when it refused to merge the gross-sexual-imposition counts with each other or with the rape counts.

{¶31} Finally, we consider whether the rape counts should have been merged with the kidnapping count. In this case, kidnapping under R.C. 2905.01(A)(1) and the rapes were allied offenses of similar import. But our analysis does not end there. We must determine whether the kidnapping was done with a separate animus so as to support a separate conviction for kidnapping.

{¶32} "Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense

12

sufficient to support separate convictions." *State v. Logan* (1979), 60 Ohio St.2d 126, 135, 397 N.E.2d 1345. Here, the state presented substantial evidence that Armstrong's confinement of K.C. was secretive. K.C. testified that he had told her to hide when his mother had come to his bedroom door and later when K.C.'s father had been calling for her. The secretiveness of the confinement was further demonstrated in that K.C. was compelled to urinate in a trash can in Armstrong's room, rather than leave his room. Finally, officers testified that the windows in Armstrong's room where K.C. was confined were covered with cardboard, shielding it from outside view. We conclude that the secretive confinement demonstrated in the record signifies a separate animus and supports a conviction for the kidnapping apart from the rape offenses. The trial court properly convicted Armstrong of each of the offenses. The eighth assignment of error is overruled.

{¶33} Because the sentence that the trial court imposed for the kidnapping was contrary to law, we modify the sentence for kidnapping to an indefinite term of 15 years to life. See R.C. 2953.08(G)(2). In all other respects, the judgment of the trial court is affirmed.

Judgment affirmed as modified.

**DINKELACKER, P.J.,** and **HILDEBRANDT, J.,** concur.

Please Note:

The court has recorded its own entry this date.