[Cite as *State v. Wampler*, 2014-Ohio-37.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| DAVID F. WAMPLER | : | Case No. 13-CA-3 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Fairfield County
                            Court of Common Pleas, Case No.
                            12 CR 29




JUDGMENT:                   Affirmed




DATE OF JUDGMENT:           January 2, 2014




APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

GREGG MARX                            DAVID A. SAMS
Prosecuting Attorney                  Box 40
                                      West Jefferson, OH 43162


By: JAMES A. DAVEY
Assistant Prosecuting Attorney
239 W. Main Street, Suite 101
Lancaster, OH 43130

*Baldwin, J.*

{¶1}     Appellant David F. Wampler appeals a judgment of the Fairfield County Common Pleas Court convicting him of four counts of aggravated arson (R.C. 2909.02(A)(1) &(2)), one count of attempted aggravated arson (R.C. 2909.02(A)(2), 2923.02), and four counts of arson (R.C. 2909.03(A)(1), (B)(2)(b)).   Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2}     On July 6, 2011, appellant lived on 522 East Mulberry Street in Lancaster, Ohio, with Howard Crane and Rose Bennett.   He spent the evening of July 6 drinking and visiting next door at the home of Kathy Clum.   Rose Bennett's daughter Barbie and her boyfriend Chip were also at Clum's house.

{¶3}     Appellant began to accuse Barbie of cheating on Chip, and appellant called Barbie names.   Kathy became upset with appellant.   The two engaged in an argument, during which appellant said to Kathy, "I'm going to fuck you up."   Chip physically picked appellant up and removed him from the back yard.   Upon returning home, appellant told Rose Bennett that he was going to "get the bitch," referring to Kathy, and he was going to "burn it down."

{¶4}     At 12:56 a.m. on July 7, 2011, Kathy was sitting on her front porch when she heard an explosion.   Rose noticed flames coming from Kathy's garage.   Rose and Howard ran next door to alert Kathy to the fire, and helped her remove items from the garage.   The fire began to spread to the house which was about 13-15 feet away, melting the siding.   Shortly thereafter, fires were reported at two homes behind Kathy Clum's home on Mulberry street.   The fire at one home was started by lighting a lattice

attached to the porch. The flames began climbing to the second story. At the time of the fire, Jason Uhl was asleep upstairs. When firefighters arrived on the scene, Uhl was coming out of the house, having been awakened by a phone call from his girlfriend and by pounding on his door. The third fire was started when a seat cushion on the porch furniture was set on fire. Gina Getz was home when the fire started. During this same time period of approximately 45 minutes, three vehicles parked a short distance from the house fires were set on fire and completely destroyed.

{¶5} The next day, police arrested appellant on a probation violation warrant. They found him hiding in a closet in his residence. Although appellant had told Howard Crane he was staying inside after the argument with Kathy, he admitted that he was walking around outside during the time of the fires. In fact, video surveillance from a bank recorded appellant walking in the area of the fires during the time period in which the fires were set.

{¶6} Appellant was charged in a 16-count indictment with four counts of aggravated arson, one count of attempted arson, ten counts of arson and one count of theft. The theft charge and several of the counts of arson related to events which occurred on October 18, 2011.

{¶7} The case proceeded to jury trial in the Fairfield County Common Pleas Court. At trial, fire inspector Jason Coy testified that the pattern of fires set on July 7, 2011, was consistent with a "spree arsonist," where three or more fires are set with no cooling off period, with the arsonist typically having a motive for setting the first fire. Coy described how by walking the route of the fires set on July 7, 2011, he concluded that one person could have set all the fires. He further testified that the video showing

appellant walking by a bank at 1:10 a.m. corresponded to appellant's approximate location if he walked from the house fires set at 1:07 to the car fires reported at 1:13 a.m. Coy testified that the fires all were consistent with being set with the flick of a lighter with no accelerant. Crane testified that appellant smoked, and carried a Bic lighter with him.

{¶8} Following trial, appellant was convicted of four counts of aggravated arson, one count of attempted aggravated arson, and four counts of arson, all related to the fires set on July 7, 2011. He was acquitted of the remaining charges, including all charges related to fires set on October 18, 2011. The court merged counts one and two and sentenced appellant to eight years incarceration on count one. The court sentenced appellant to five years incarceration for count three, and 18 months each for counts four, five, six and seven. The court merged counts eight and nine and sentenced appellant to nine years incarceration. The court ordered all sentences to run consecutively. Appellant assigns five errors on appeal to this Court:

{¶9} "I. DEFENDANT-APPELLANT WAS DENIED A SPEEDY TRIAL UNDER OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶10} "II. THE CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE AND WAS OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶11} "III. DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER JOINDER OF OFFENSES CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶12} "IV.    DEFENDANT-APPELLANT WAS DENIED DUE PROCESS BY A SENTENCE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

{¶13} "V.    DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE STATE AND FEDERAL CONSTITUTIONS."

I.

{¶14}    Appellant argues that he was denied his right to a speedy trial, as he was not brought to trial within the time limits set forth in R.C. 2945.71.   While the state argues that appellant has waived this issue by failing to file a motion to dismiss, the parties did file memoranda to the trial court on the issue of the time remaining for trial, and the trial court issued a judgment entry on the time remaining for trial on August 17, 2012.  Therefore, we will consider this issue on the merits.

{¶15}    The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. Pursuant to these constitutional mandates, R.C. 2945.71 through R.C. 2945.73 prescribe specific time requirements within which the State must bring an accused to trial. *State v. Baker,* 78 Ohio St.3d 108, 110, 1997-Ohio-229, 676 N.E.2d 883. R.C. 2945.71 provides, in pertinent part:

{¶16}    "(C) A person against whom a charge of felony is pending:

{¶17}    "(2) Shall be brought to trial within two hundred seventy days after the person's arrest....

{¶18} "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section."

{¶19} However, the time limit can be tolled, or extended, pursuant to R.C. 2945.72, which states, in relevant part:

{¶20} "The time within which an accused must be brought to trial, * * * may be extended only by the following:

{¶21} "(E) Any period of delay necessitated by reason of a .... motion, proceeding, or action made or instituted by the accused.

{¶22} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."

{¶23} Speedy trial statutes are to be strictly construed against the State. *State v. Miller*, 113 Ohio App.3d 606, 681 N.E.2d 970(1996). In reviewing a speedy trial claim, an appellate court must count days chargeable to each side and determine whether the case was tried within the statutory time limits. *City of Oregon v. Kohne*, 117 Ohio App.3d 179, 690 N.E.2d 66 (1997).

{¶24} Appellant was served with the arrest warrant on January 23, 2012. He was held in jail in lieu of bail; thus the triple-count provision of R.C. 2945.71(E) applied.

{¶25} On January 26, 2012, appellant filed a request for discovery and for a bill of particulars, thus tolling the time pursuant to R.C. 2945.72(E). At that point, six days had elapsed pursuant to the triple-count provision. The State responded to appellant's

request on February 3, 2012. Thus, time began to run again until appellant filed a request for an appointment of an expert on February 29, 2012, thus tolling the time. Applying the triple-count provision, seventy-eight more days elapsed, bringing the total number of days to eighty-four.

{¶26} Appellant filed a motion to continue the trial on March 1, 2012, thus the time remained tolled pursuant to R.C. 2945.72(H) during the period of continuance. Trial was set for jury trial starting April 24, 2012. However, on March 30, 2012, appellant filed a waiver of his speedy trial rights. He filed a withdrawal of his speedy trial waiver on April 26, 2012. Thus, time ceased to be tolled and began to run again on April 26, 2012.

{¶27} Time ran from April 26, 2012, until May 23, 2012, when appellant filed a motion to sever the counts in the indictment, a tolling event pursuant to R.C. 2945.72(E). Based on the triple count provision, eighty-one more days elapsed, bringing the total number of days elapsed to 165 days. On May 23, 2012, appellant also filed a waiver of his speedy trial rights for a period of sixty days. Thus, time was tolled until July 23, 2012.

{¶28} During this time, appellant was indicted on unrelated charges and held in prison. A defendant is entitled to the benefit of the triple-count provision of R.C. 2945.71(E) only when he is held in prison on solely on the pending charge. *State v. Kaiser*, 56 Ohio St. 2d 29, 34,381 N.E.2d 633 (1978). Therefore, as of July 13, 2012, the triple-count provision ceased to apply.

{¶29} Further, on July 16, 2012, appellant filed a motion to disqualify the prosecuting attorney, tolling the time until the motion was overruled on July 30, 2012.

Time therefore begin to run again on that date. At that point, 105 days remained in which appellant must be brought to trial. Appellant's trial began 85 days later, on October 23, 2012. Appellant's right to a speedy trial was not violated in the instant case.

{¶30} The first assignment of error is overruled.

II.

{¶31} In his second assignment of error, appellant argues that the judgment was against the manifest weight and sufficiency of the evidence.

{¶32} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶33} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶34} Appellant was convicted of aggravated arson in violation of R.C. 2909.02(A):

{¶35}   "(A) No person, by means of fire or explosion, shall knowingly do any of the following:

{¶36}   "(1) Create a substantial risk of serious physical harm to any person other than the offender;

{¶37}   "(2) Cause physical harm to any occupied structure[.]"

{¶38}   Appellant was also convicted of arson in violation of R.C. 2909.03:

{¶39}   "(A) No person, by means of fire or explosion, shall knowingly do any of the following:

{¶40}   " (1) Cause, or create a substantial risk of, physical harm to any property of another without the other person's consent[.]

{¶41}   "(B)(1) Whoever violates this section is guilty of arson.

{¶42}   "(2) A violation of division (A)(1) of this section is one of the following:

{¶43}   "(b) If the value of the property or the amount of the physical harm involved is one thousand dollars or more, a felony of the fourth degree."

{¶44}   Appellant first argues that the judgments on counts one, three, four and nine were not supported by sufficient evidence because there was no evidence the buildings were "occupied structures."  He argues the fires were set to a detached garage, a porch, and a lattice, not to an occupied structure.

{¶45}   Occupied structure is defined by R.C. 2909.01(C):

{¶46}  "(C) 'Occupied structure' means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

{¶47}   "(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

{¶48}   "(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

{¶49}   "(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

{¶50}   "(4) At the time, any person is present or likely to be present in it."

{¶51}   Appellant appears to interpret R.C. 2909.02(A)(2) to require that the offender set fire directly to an occupied structure.  The statute only requires that the offender, by means of fire or explosion, knowingly cause harm to an occupied structure. R.C. 2901.22(B) provides that a "person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

{¶52}   The fire at the home of Kathy Clum was set to an unoccupied garage; however, the fire started to spread to the house before firefighters were able to extinguish it.  The house was about 13-15 feet from the garage, and the fire was started on the side nearest the house.  The evidence established that the fire melted the siding on the house, causing physical harm to the house.  From this evidence, the jury could conclude that appellant knowingly caused physical harm to Clum's home by lighting the fire in the garage.

{¶53}   The fire at the home of Gina Getz was set to furniture on the front porch. At the time, Gina was asleep upstairs in the home.  The porch was attached to the

house. This evidence was sufficient to prove that appellant knowingly caused physical harm to an occupied structure.

{¶54} The fire at the home of Maria Marzano was set to a lattice attached to the porch, and the flames began climbing to the second story. At the time of the fire, Jason Uhl was asleep upstairs. When firefighters arrived on the scene, Uhl was coming out of the house, having been awakened by a phone call from his girlfriend and by pounding on his door. The fire did $20,000.00 worth of damage to Marzano's belongings and $120,000.00 in damage to the home. This evidence was sufficient to prove that appellant knowingly caused physical harm to an occupied structure.

{¶55} Appellant next argues that as to the three counts of arson for the vehicles belonging to Sherry Lowe, William Young and Sara Sells, the evidence was insufficient to prove that the value of the vehicles or the amount of the physical harm to the vehicles was at least $1,000.00.

{¶56} R.C. 2909.11 sets forth the criteria to use in evaluating whether the amount of physical harm is at least $1,000.00, thus elevating the degree of the offense of arson as defined by R.C. 2909.03 to a felony:

{¶57} "(B) The following criteria shall be used in determining the value of property or amount of physical harm involved in a violation of division (A)(1) of section 2909.03 or section 2909.05 of the Revised Code:

{¶58} "(1) If the property is an heirloom, memento, collector's item, antique, museum piece, manuscript, document, record, or other thing that is either irreplaceable or is replaceable only on the expenditure of substantial time, effort, or money, the value

of the property or the amount of physical harm involved is the amount that would compensate the owner for its loss.

{¶59} "(2) If the property is not covered under division (B)(1) of this section and the physical harm is such that the property can be restored substantially to its former condition, the amount of physical harm involved is the reasonable cost of restoring the property.

{¶60} "(3) If the property is not covered under division (B)(1) of this section and the physical harm is such that the property cannot be restored substantially to its former condition, the value of the property, in the case of personal property, is the cost of replacing the property with new property of like kind and quality, and, in the case of real property or real property fixtures, is the difference in the fair market value of the property immediately before and immediately after the offense."

{¶61} Sherry Lowe's 1993 Sundance was completely destroyed by the fire. She testified that members of her church bought the vehicle for $800.00 so that she could transport her foster child. She further testified that the child's car seat was in the backseat of the car at the time it was destroyed by fire. Viewing this evidence in a light most favorable to the state, the jury could conclude pursuant to R.C. 2909.11(B)(3) that the cost of replacing the car and car seat with a car and car seat of like kind and quality was $1,000.00.

{¶62} William Young testified that he purchased his 1990 Ford Ranger for $1,000.00 a year earlier. He testified that he scrapped the vehicle after the fire because the cost to repair it was greater than the cost of the vehicle. Viewing this evidence in a light most favorable to the state, the jury could conclude pursuant to R.C.

2909.11(B)(3) that the cost of replacing the vehicle with one of like kind and quality was $1,000.00 or more.

{¶63} Sara Sells testified that she purchased her 1998 Chevy Astro van one year earlier for $3,000.00. Viewing this evidence in a light most favorable to the state, the jury could conclude pursuant to R.C. 2909.11(B)(3) that the cost of replacing the van with one of like kind and quality exceeded $1,000.00.

{¶64} Appellant next argues that the judgment finding him to be the perpetrator is against the manifest weight of the evidence. All of the fires were reported within a 45-minute time period, in the area where appellant was living and where he was seen walking on video surveillance. Appellant was angry with Kathy Clum earlier, and threatened to "fuck her up." He also said that he was going to "get the bitch" and referenced burning as the means he intended to use. The first fire was set to Clum's house not long after this argument between appellant and Clum. An expert witness testified that the pattern of the fires demonstrated "spree arson," where the motive is usually detected at the first fire set. In this case, the fire at Clum's house was the first fire set, not long after appellant argued with her and threatened her. The next house fires were set behind Clum's residence, and the remaining fires were within walking distance. While there were other suspects which police investigated, they were eliminated from suspicion fires for a variety of reasons. Based on the evidence presented, the jury did not lose its way in identifying appellant as the perpetrator.

{¶65} Appellant next argues that the evidence did not support his conviction of aggravated arson in count eight, as Jason Uhl escaped from the home. He argues there was not a substantial risk of physical harm to Uhl. We disagree. Uhl was asleep

inside the house when the fire was set. He was awakened by a telephone call from his girlfriend and someone banging on the door. The house was smoky inside and flames were beginning to climb to the second story from the lattice. Further, the state presented expert testimony that if someone was asleep and did not wake up, he probably would not have made it out of the home safely because of the smoke and fire damage.

{¶66} Finally, appellant argues that the jury erred in relying on the expert testimony of Jason Coy, the fire inspector, as he did not phrase his conclusions to a reasonable degree of scientific certainty. Appellant did not object to his testimony, and in fact stipulated that Coy was an expert. Appellant does not assign error to the admission of Coy's testimony. Therefore, the jury could properly rely on Coy's testimony.

{¶67} The second assignment of error is overruled.

III.

{¶68} In his third assignment of error, appellant argues that the court erred in overruling his motion to sever the counts related to the events of October 18, 2011. The trial court found that evidence of the events of July 7, 2011 and October 18, 2011 shared similar characteristics, and evidence of the other alleged arsons and of the theft would have been admissible in separate trials pursuant to Evid. R. 404(B) as proof of intent, plan, knowledge, motive, opportunity, or absence of accident.

{¶69} Ohio Criminal Rule 8(A) governs joinder of offenses, and provides:

{¶70} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged,

whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶71}   Criminal Rule 14 governs relief from prejudicial joinder, and states:

{¶72}   "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."

*{¶73}*   Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses. *State v. Schaim*, 65 Ohio St.3d 51,600 N.E.2d 661, 1992-Ohio-31.   Joinder of offenses solely because they are of the same or similar character creates a greater risk of prejudice to the defendant, while the benefits from consolidation are reduced because "unrelated offenses normally involve different times, separate locations, and distinct sets of witnesses and victims." *Id.* When a defendant claims he or she was prejudiced by the joinder of multiple offenses, the court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed; and (2) if not, whether the evidence of each crime is simple and distinct. *Id.* at 59. The

defendant bears the burden of proving prejudice and that the trial court abused its discretion in denying severance. *Id.*

{¶74} Appellant has not demonstrated prejudice from joinder. The jury acquitted appellant of all counts related to October 18, 2011. The evidence of each of the fires, and the alleged theft of a motorcycle on October 18, 2011, was simple and distinct. The jury's verdict demonstrates that they were able to separate the evidence of each fire and make a determination on each count. As discussed in assignment of error two, the jury's verdict on counts one through nine was supported by the evidence, and appellant has not demonstrated that he was prejudiced by admission of evidence concerning the counts on which he was ultimately acquitted.

{¶75} The third assignment of error is overruled.

IV.

{¶76} In his fourth assignment of error, appellant argues that the court erred in sentencing him consecutively. He argues that his sentence is unfair when compared to that of Sherie L. Bomar, who was also convicted of aggravated arson, particularly as no one was injured in appellant's case. He also argues that the offense were a part of a "spree" and therefore are allied offenses of similar import.

{¶77} 2011 Am.Sub.H.B. No. 86, which became effective on September 30, 2011, revived the language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The General Assembly has thus expressed its intent to revive the statutory fact-finding provisions pertaining to the imposition of consecutive sentences that were effective pre-*Foster. See State v. Wells,* Cuyahoga App.No. 98428, 2013–Ohio–1179, ¶ 11. These revisions to the felony sentencing statutes now require a trial

court to make specific findings when imposing consecutive sentences. Nonetheless, "[a]lthough H.B. 86 requires the trial court to make findings before imposing a consecutive sentence, it does not require the trial court to give its reasons for imposing the sentence." *State v. Bentley,* Marion App.No. 9–12–31, 2013–Ohio–852, ¶ 12, citing *State v. Frasca,* Trumbull App.No.2011–T–0108, 2012–Ohio–3746, ¶ 57. Likewise, "under H.B. 86, a trial court is not required to articulate and justify its findings at the sentencing hearing when it imposes consecutive sentences as it had to do under S.B. 2." *State v. Redd,* Cuyahoga App.No. 98064, 2012–Ohio–5417, ¶ 12. But the record must clearly demonstrate that consecutive sentences are not only appropriate, but are clearly supported by the record. See *State v. Bonnell,* Delaware App.No. 12CAA3022, 2012–Ohio–5150.

{¶78}   R.C. 2929.14(C)(4) provides, in relevant part:

{¶79}   "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶80}   "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶81}   "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶82}   "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶83}   In its sentencing entry, the court found that consecutive sentencing is necessary to punish appellant and protect the public, consecutive sentencing is not disproportionate to the purposes and principles of felony sentencing, and consecutive sentencing is necessary given appellant's history.  Judgment, January 2, 2013.  The trial court explained at length in the sentencing transcript the reasons for sentencing appellant consecutively.  The court was concerned with appellant's lengthy criminal history dating back to 1997, and that despite repeated incarcerations, appellant has not become motivated to deal with his underlying alcohol abuse issues, which the court believed to be the crux of what led appellant to this point.  Sent. Tr. 18.   The record does not reflect what the particular circumstances were of Bomar's sentence; however, in the instant case the court clearly set forth its reasons for sentencing appellant to a lengthy term of incarceration.

{¶84}   While appellant claims the fires were a part of the same course of conduct, the offenses are not allied offenses of similar import.

{¶85}   R.C. 2941.25 reads as follows:

{¶86}  "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶87}  "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶88}  In *State v. Johnson,* 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061, the Ohio Supreme Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.,* at the syllabus.

{¶89}  Appellant's reliance on *Johnson* is misplaced.  Each of the fires set by appellant was a separate act, committed separately.  The fact that they were committed close in time and space as a part of an arson spree does not require merger of the charges for each individual fire as allied offenses of similar import.

{¶90}  The fourth assignment of error is overruled.

V.

{¶91}  In his final assignment of error, appellant argues that his trial counsel was ineffective for failing to move for speedy trial and for failing to seek merger of the offenses as allied offenses of similar import.

{¶92}  A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of

ineffective assistance of counsel, appellant must show that counsel's performance fell below an objective standard of reasonable representation and that but for counsel's error, the result of the proceedings would have been different.   *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley* , 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).   In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.   *Id.*

{¶93}   Appellant cannot demonstrate prejudice, as we have found in assignment of error one that his speedy trial rights were not violated, and in assignment of error four that the offenses were not allied offenses of similar import.

{¶94}   The fifth assignment of error is overruled.

{¶95}   The judgment of the Fairfield County Common Pleas Court is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Farmer, P.J. and

Wise, J. concur.