[Cite as *State v. Dunham*, 2014-Ohio-1042.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 13CA26 |
| JOSHUA D. DUNHAM | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the  Richland County
                             Court of Common Pleas, Case No. 2010-
                             CR-0559D

JUDGMENT:                    Affirmed in part; Reversed in part;
                             Remanded

DATE OF JUDGMENT ENTRY:      March 14, 2014

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JAMES J. MAYER, JR.                   WILLIAM CRAMER
Prosecuting Attorney                  470 Olde Worthington Road, Ste. 200
By:JOHN NIEFT                         Westerville, OH 43082
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Appellant Joshua D. Dunham ["Dunham"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Dunham was indicted with one count of vehicular homicide in violation of R.C. 2903.06 (A)(1)(a) a felony of the first degree, for causing death while driving under the influence; a second count of vehicular homicide under R.C. 2903.06 (A)(2)(a) a felony of the second degree, requiring the mental state of recklessness. Dunham was also indicted with two counts of aggravated vehicular assault, the first a felony of the third degree under R.C. 2903.08(A)(1)(a) ["OVI"] and the second a felony of the fourth degree under R.C. 2903.08(A)(2)(b) ["Recklessly"]. Dunham was also indicted with two counts of operating a vehicle under the influence of alcohol or drugs—both misdemeanors of the first degree under R.C. 4511.19(A)(1)(a) ["under the influence"] and 4511.19(A)(1)(b) ["prohibited level"]

{¶3} On June 1, 2011, Dunham changed his plea of not guilty to guilty to all counts of the indictment. The court referred the matter to the probation department for the preparation of a presentence investigation report. Dunham appeared for sentencing on July 11, 2011. Dunham was fined $375.00 and sentenced to a total term of imprisonment of nine (9) years of mandatory prison time on count one (1), a one (1) year sentence on count three (3) and a six (6) month sentence on count five (5). The sentences in counts 2, 4 and 6 were merged into counts 1, 3 and 5.

{¶4} Dunham appealed. This Court held that Dunham's plea be vacated and the case be remanded because the trial court did not adequately inform Dunham that

the prison sentence imposed was mandatory or that he was ineligible for community control or probation. *State v. Dunham,* 5th Dist. Richland No. 2011-CA-121, 2012-Ohio-2957. ["*Dunham I*"].

**{¶5}** Upon remand, Dunham chose a jury trial. The following evidence was presented to the jury.

**{¶6}** On August 17, 2010, Dunham, Ryan Miller, Zach Maxey, and Mason Volkmer went to Buffalo Wild Wings around 8:00 p.m. Dunham was driving his older SUV. They began drinking and had around six or seven 23-ounce beers over the next three hours. They also drank one or two shots of hard liquor. While there, Dunham's friend Seth Stevens arrived with his girlfriend, Courtney Machuisi. They joined them, eating and drinking.

**{¶7}** Around 11:00 p.m., the group decided to go to Joez Lounge to continue drinking. Dunham drove his SUV with Miller, Maxey, and Volkmer in it; Stevens and Machuisi went in Stevens' vehicle, but Machuisi drove because she had only had one shot of liquor so far that evening. Stevens and Machuisi were afraid to ride with Dunham because he had been drinking heavily.

**{¶8}** At Joez Lounge, the group had more shots of liquor and hung out for about an hour. Dunham had three to seven shots and more beer at Joez Lounge within that hour. Ryan Rush and Aaron Kessler joined this group at Joez Lounge. Kessler had driven his motorcycle there. Most of the group planned to go to the Top Hat strip club on US 42 next. Dunham got into his SUV and drove to the door of Joez Lounge, almost hitting the building as he pulled around. Maxey jumped in the front passenger seat and Stevens, Machuisi, and Miller got in the back seat. Volkmer attempted to get into the

SUV's back seat, but there was not enough room. Kessler, who was not going to Top Hat, offered to drop Volkmer off there. Kessler had not been drinking that night. A blood test taken from Kessler later at the hospital was negative for alcohol. They left around 12:45 a.m. on August 18, 2010.

{¶9} There was disagreement in the testimony regarding whether Dunham in his SUV or Volkmer and Kessler on the motorcycle left the parking lot first. The sober Ryan Rush testified that Kessler left first, followed by the SUV. Ryan Rush was not going to Top Hat that night, so he did not witness the crash. Maxey, Stevens, Machuisi, and Miller testified that they left first, and the motorcycle followed. Ms. Machuisi was frightened of Dunham's jerky driving.

{¶10} Miller, Machuisi, and Maxey testified that the motorcycle passed the SUV early on Laver Road, and sped ahead out of sight. The SUV crested a hill on Laver Road near US 42 and saw a stopping or stopped Kessler. Stevens testified that the motorcycle passed the SUV closer to US 42 and swerved in front of the SUV and stopped suddenly. They all testified that the SUV was going between 40 and 60 M.P.H. with music blaring when the accident occurred.

{¶11} Frank Jenkins and off-duty Mansfield Police Officer David Minard were driving South on US 42 when the crash occurred. They testified that they saw the motorcycle slowing down to stop at the stop sign on Laver Road at US 42. They saw a black SUV coming behind it and heard the SUV's motor revving. They testified that the black SUV never slow down and crash into the motorcycle, throwing Mason Volkmer into a telephone pole nearly 200 feet away. Aaron Kessler and the motorcycle were carried as the SUV skidded onto US 42. Kessler fell under the SUV and the SUV was

driven to a driveway nearby. The SUV fishtailed through the intersection. Jenkins, who was driving his truck, had to stop to avoid being struck.

{¶12} After the crash, Jenkins turned his truck around to assist. Minard called 9-1-1 and checked the pulse of Volkmer, noting he had a pulse. Minard next checked Kessler, who was screaming in pain and confusion. Everyone in the SUV jumped out and scattered. Maxey and Miller walked toward the woods and took a back way to the Top Hat, which was nearby on US 42. Stevens took Machuisi into the woods, where they walked to a gas station and got a ride back to Joez Lounge. They then drove home. Dunham was going to flee as well, but was stopped by Minard. Minard could smell the alcohol on Dunham's person. Dunham told Minard that his life was over and that he "fucked up."

{¶13} Paramedics and police officers were dispatched at 12:53 a.m. and arrived within minutes. Volkmer was unresponsive and in serious condition. Kessler was awake and in shock. They were both transported to MedCentral Hospital. Volkmer had a skull fracture, a broken arm, a lacerated lung, liver, spleen, and twisted kidney. Volkmer was sent on Life Flight to Columbus shortly after arriving at MedCentral, but had a heart attack shortly after takeoff and died that night. Kessler was injured with a deep wound to his left ankle and a fractured right ankle as well as other scrapes and bruises. His injuries required two surgeries, one for each ankle. Kessler had a significant amount of physical therapy and pain following this injury until his death six months later. Kessler's father testified that Kessler got another motorcycle in March 2011, a few months after the accident. Sometime before trial, Kessler was killed in another accident on his new motorcycle.

**{¶14}** There was some evidence that Kessler only had a temporary motorcycle permit. If so, then he was prohibited from riding his motorcycle at night and from having passengers. Additionally, an officer testified that Laver Road has a double yellow line, which means that vehicles are not permitted to pass.

**{¶15}** Officers took photographs of the scene of the accident and interviewed witnesses. Maxey and Miller were found at Top Hat, and after lying about their involvement twice, were taken to give statements. Trooper James Belcher of the Ohio State Highway Patrol interviewed Dunham on scene. Trooper Belcher noted the smell of alcohol on the Dunham. Dunham denied drinking that night.

**{¶16}** Dunham was read his *Miranda* rights and wrote out a statement. In that statement, he admitted he was driving the SUV during the crash and that the accident was his fault because he was following the motorcycle too closely. Dunham told the police that the motorcycle slammed on its brakes and there was no indication it was going to stop, and the accident was his fault because he was not able to stop in time. Dunham also denied that people were in the SUV and, when confronted with the statements of Minard and Jenkins, refused to identify anyone else who was in the SUV. Trooper Belcher tested Dunham with the standard field sobriety tests. ["FST's"] Dunham failed all three tests. LEADS also showed that Dunham had an expired license that night. Dunham refused to take a breath test, urine test, or blood draw to test for alcohol consumption.

**{¶17}** Trooper Belcher arrested Dunham, took him to the hospital, and ordered a blood draw. Dunham's blood tested at .139 BAC at 4:20 a.m., over three hours after the

crash. The video of Dunham in the patrol car between places was shown to the jury, which included Dunham saying this was the worst mistake of his life.

{¶18} Jeffrey Payne, supervisor for the Ohio Bureau of Motor Vehicles, Records Request Unit testified regarding Dunham's license, driving record, and requirement to take the examination again if he were to apply for a license at the time of the crash. Payne testified that Dunham's license expired on his 21st birthday, August 6, 2009, over a year prior to this crash. Payne testified that, according to the BMV, Dunham would have been subject to re-examination at the time of the crash.

{¶19} Dr. Robert Forney, a forensic toxicologist, testified regarding Dunham's blood alcohol content at the time of the accident. Based upon the .139 BAC at 4:20 a.m., Dr Forney testified to a reasonable degree of scientific certainty, Dunham was intoxicated at 12:57 a.m., the time of the crash, and that his perception, judgment, reaction time, and coordination were significantly impaired.

{¶20} Trooper Brian Butler testified as an accident reconstructionist. He responded to the crash that night and took pictures and measurements. He completed a field sketch of the crash. Trooper Butler noted that skid marks extended 200 feet on Laver Road from the point of impact to US 42. The dips on Laver Road, described by several witnesses, were not near the crash site. Trooper Butler ultimately found that the crash happened on Laver Road about 200 feet before the intersection of US 42. The SUV did not leave skid marks before the crash, and skidded and fishtailed for over 200 feet, which took it past the intersection. The SUV parked 256 feet from the point of accident.

**{¶21}** In February 2013, the jury acquitted Dunham of the first-degree felony charge of aggravated vehicular homicide (OVI) in count one. The jury found Dunham guilty of aggravated vehicular homicide (reckless) in count two. The jury also found that the prosecution proved beyond a reasonable doubt that Dunham was driving without a valid license and was not eligible for renewal absent an examination. The jury further found Dunham guilty of aggravated vehicular assault ("OVI") in count three; aggravated vehicular assault ("reckless") in count four; OVI("prohibited level")  in count five and OVI ("under the influence") in count six.

**{¶22}**  At the sentencing hearing held February 13, 2013, the state conceded that counts 4, 5 and 6 would merge with counts two and three. (Sent. T. Feb 13, 2013 at 9). The trial court merged count four [aggravated vehicular assault ("reckless")]   into count three [aggravated vehicular assault ("OVI")] and count six [OVI ("under the influence")] into count five [OVI ("prohibited level")] as allied offenses. The trial court then imposed a maximum mandatory prison term of eight years on count two, a consecutive mandatory term of two years on count three, and a concurrent term of six months on count five, for an aggregate term of ten years mandatory prison time. The court also imposed a lifetime driver's license suspension, three years of mandatory post-release control, and ordered restitution of $11,314.27 for the funeral expenses of Mason Volkmer.

### ASSIGNMENTS OF ERROR

**{¶23}**  Dunham raises six assignments of error,

**{¶24}**  "I. APPELLANT WAS DEPRIVED OF DUE PROCESS BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE FINDING THAT APPELLANT

DID NOT HAVE A VALID DRIVER'S LICENSE AND WAS NOT ELIGIBLE FOR RENEWAL WITHOUT EXAMINATION.

**{¶25}** "II. THE TRIAL COURT VIOLATED DUE PROCESS BY OMITTING RELEVANT JURY INSTRUCTIONS REGARDING CAUSATION.

**{¶26}** "III. THE TRIAL COURT VIOLATED DUE PROCESS AND R.C. 2929.14(C) (4) BY FAILING TO MAKE THE FINDINGS REQUIRED BY STATUTE BEFORE IMPOSING CONSECUTIVE SENTENCES.

**{¶27}** "IV. THE TRIAL COURT VIOLATED DUE PROCESS BY ERRONEOUSLY IMPOSING A LIFETIME LICENSE SUSPENSION BASED ON THE MISTAKEN BELIEF THAT THIS WAS A CLASS ONE SUSPENSION, WHEN IT WAS ONLY A CLASS TWO.

**{¶28}** "V. THE TRIAL COURT VIOLATED DOUBLE JEOPARDY AND DUE PROCESS, AND R.C. 2941.25, WHEN IT FAILED TO MERGE THE OVI CONVICTIONS INTO VEHICULAR HOMICIDE OR ASSAULT.

**{¶29}** "VI. THE TRIAL COURT VIOLATED DUE PROCESS AND R.C. 2929.18 WHEN IT ORDERED RESTITUTION FOR ECONOMIC LOSSES THAT WERE PREVIOUSLY PAID BY INSURANCE."

I.

**{¶30}** The finding that Dunham did not have a valid driver's license and was not eligible for renewal without examination enhanced Dunham's conviction for aggravated vehicular homicide. This allegation elevated count one from a second degree felony to a first degree felony (R.C. 2903.06(B)(2)(b)(i)); elevated count two from a third degree

felony to a second degree felony (R.C. 2903.06(B)(3)); and made a prison term mandatory on count two (R.C. 2903.06(E)).

**{¶31}** In his first assignment of error, Dunham contends that the state did not prove he did not have a valid driver's license and that he was ineligible for renewal without reexamination under R.C. 2903.06(B)(3).

**{¶32}** The enhancement of R.C. 2903.06(B)(3) and (E)(2) require a finding that the offender "did not have a valid driver's license . . . and was not eligible for renewal of the offender's driver's license . . . without examination under section [R.C.] 4507.10." Relevant to the case at bar, R.C. 4507.10 provides,

> (A) Except as provided in section 4507.11 of the Revised Code, the registrar of motor vehicles shall examine every applicant for a temporary instruction permit, driver's license, or motorcycle operator's endorsement before issuing any such permit, license, or endorsement.

* * *

> (C) The registrar may waive the examination of any person applying for the renewal of such a license or endorsement who is on active duty in the armed forces of the United States or in service with the peace corps, volunteers in service to America, or the foreign service of the United States if the applicant has no physical or mental disabilities that would affect the applicant's driving ability, had a valid Ohio driver's or commercial driver's license at the time the applicant commenced such active duty or service, and the applicant's license is not under suspension or revocation by this state or any other jurisdiction. The registrar also may

waive the examination of the spouse or a dependent of any such person on active duty or in service if the applicant has no physical or mental disabilities that would affect the applicant's driving ability, was an Ohio licensee at the time the person commenced the active duty or service, and if the person's active duty caused the spouse or dependent to relocate outside of this state during the period of the active duty or service.

(D) Except as provided in section 4507.12 of the Revised Code, the registrar may waive the examination of any person applying for such a license or endorsement who meets any of the following sets of qualifications:

(1) Has been on active duty in the armed forces of the United States, *presents an honorable discharge certificate showing that the applicant has no physical or mental disabilities that would affect the applicant's driving ability,* had a valid Ohio driver's or commercial driver's license at the time the applicant commenced the applicant's active duty, is not under a license suspension or revocation by this state or any other jurisdiction, and makes the application not more than six months after the date of discharge or separation;

(2) Was in service with the peace corps, volunteers in service to America, or the foreign service of the United States; *presents such evidence of the applicant's service as the registrar prescribes showing that the applicant has no physical or mental disabilities that would affect the applicant's driving ability;* had a valid Ohio driver's or commercial driver's

license at the time the applicant commenced the applicant's service, is not under a license suspension or revocation by this state or any other jurisdiction, and makes the application no more than six months after leaving the peace corps, volunteers, or foreign service.

(3) Is the spouse or a dependent of a person on active duty in the armed forces of the United States, or in service with the peace corps, volunteers in service to America, or the foreign service of the United States; *presents such evidence as the registrar prescribes showing that the applicant has no physical or mental disabilities that would affect his driving ability; presents such evidence as the registrar prescribes showing that the applicant relocated outside of Ohio as a result of the person's active duty or service*; was an Ohio licensee at the time of the relocation; and makes the application not more than six months after returning to Ohio. (Emphasis added).

**{¶33}** Dunham argues in the case at bar the state did not properly prove that he was required to retest because he may have had some active military service before the crash. Dunham argued that it was the state's burden to prove that he was not eligible for renewal without examination.

**{¶34}** It is clear from an examination of the provisions R.C. 4507.10, that a waiver of the examination requirement is discretionary not mandatory. The word "shall" is usually interpreted to make the provision in which it is contained mandatory. *Dorrian v. Scioto Conservancy District,* 27 Ohio St. 2d 102, 107, 271 N.E.2d 834 (1971). In contrast, the use of the word "may" is generally construed to make the provision in

which it is contained optional, permissive, or discretionary. Id. The words "shall" and "may" when used in statutes are not automatically interchangeable or synonymous. Id. To give the "may" as used in a statute a meaning different from that given in its ordinary usage, it must clearly appear that the Legislature intended that it be so construed from a review of the statute itself. Id. at 107– 108, 271 N.E. 2d 834. *In re: McClanahan*, 5th Dist. Tuscarawas No. 2004AP010004, 2004–Ohio–4113, ¶ 17.

**{¶35}** Further, the Legislature has made it the duty of the individual who is asking the registrar to waive the examination to prove and present evidence that he or she meets the requirements necessary for the register to waive examination.

**{¶36}** R.C. 2901.05(D)(1) defines an affirmative defense as either "a defense expressly designated as affirmative," or "a defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence." Because Dunham would be required to present sufficient proof to the register that he was either on active duty or had been on active duty in order for the register to consider waiving the examination requirement, we find Dunham "can fairly be required to adduce supporting evidence" on this issue. There is no duty on the part of the register to contact each branch of the military to determine if Dunham was on active duty or had been on active duty. If Dunham does not prove his status to the register's satisfaction, the examination would not be waived.

**{¶37}** Dunham's first assignment of error is overruled.

II.

**{¶38}** In his second assignment of error, Dunham alleges the trial court did not provide the jury adequate instructions regarding intervening causation.

{¶39} On the issue of causation, the trial court instructed the jury as follows,

Cause is an essential element of the offense. Cause is an act or failure to act which in a natural and continuous sequence directly produced the [accident] and without which it would not have occurred. Mr. Dunham's responsibility is not limited to the immediate or most obvious result of his act or failure to act. He is also responsible for the natural and foreseeable results that follow in the ordinary course of events from the act or failure to act. There may be more than one cause of an event. However, if Mr. Dunham's act or failure to act was one cause, then the existence of other causes is not a defense. Mr. Dunham is responsible for the natural consequences of his unlawful act or failure to act, even though the death was caused by the act or failure to act of another person.

{¶40} In his second assignment of error, Dunham claims the last sentence of the instruction was misleading because it omitted two words necessary to convey the concept of intervening causation. Dunham argues Ohio Jury Instructions, Section 417.25, states,

The defendant is responsible for the natural consequences of the defendant's unlawful act or failure to act, even though (death) (physical harm to [person] [property]) was *also* caused by the *intervening* act or failure to act of another (person) (agency).

{¶41} Dunham contends by omitting the italicized words "also" and "intervening," the trial court's instruction removed the concept of an intervening cause. Rather than

dealing with multiple causes, the instruction literally says that Dunham is responsible for what happened even if it was entirely caused by someone else.

**{¶42}** The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462(3rd Dist. 1993). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140(1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792(1988).

**{¶43}** Crim.R. 30(A) governs instructions and states as follows:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the

grounds of the objection. Opportunity shall be given to make the objection

out of the hearing of the jury.

**{¶44}** Dunham did not object to the trial court's jury instructions. Based upon Dunham's failure to object to the instructions and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine.

**{¶45}** In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35(1999) the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not *necessarily* render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

**{¶46}** Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.

**{¶47}** The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 308(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643,

646(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.'" State *v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus. *Perry, supra*, at 118, 802 N.E.2d at 646.

{¶48} Proximate cause does not require that the conduct of one defendant be the sole cause of a legal injury. As a matter of law, there may be more than one proximate cause of an injury. *Taylor v. Webster*, 12 Ohio St.2d 53, 231 N.E.2d 870(1967) and *Strother v. Hutchinson*, 67 Ohio St.2d 282, 423 N.E.2d 467(1981). The plaintiff need only prove "some reasonable connection" between the act or omission and the damage suffered or prove that the conduct is a substantial factor in bringing about the injury in order to satisfy the requirement of proximate cause. *See R.H. Macy & Co. v. Otis Elevator Co.*, 51 Ohio St.3d 108, 110, 554 N.E.2d 1313(1990) (some reasonable connection required to prove proximate cause in products liability case); *see, also, Person v. Gum*, 7 Ohio App.3d 307, 311, 455 N.E.2d 307(8th Dist. 1983); Restatement of the Law, Torts 2d (1965), Section 431; Prosser & Keeton, Law of Torts (5 Ed.1984) 268, Section 41 (conduct qualifies as proximate cause if it is a substantial factor in bringing about plaintiff's injury).

{¶49} It is well established that the definition of "cause" in criminal cases is identical to the definition of "proximate cause" in civil cases. *State v. Chambers*, 53 Ohio App.2d 266, 373 N.E.2d 266(9th Dist. 1977); *State v. Bendycki*, 8th Dist. Cuyahoga No. 42813, 1981 WL 4957; *State v. Cruse*, 1st Dist. Hamilton No. C-811031, 1982 WL 8765; *State v. Jacobs*, 8th Dist. Cuyahoga No. 51693, 1987 WL10047. The general rule is that

a defendant's conduct is the proximate cause of injury or death to another if the defendant's conduct (1) is a "substantial factor" in bringing about the harm and (2) there is no other rule of law relieving the defendant of liability. *See Pang v. Minch,* 53 Ohio St.3d 186, 559 N.E.2d 1313(1990); *Keleman v. Williams*, 10th Dist. Franklin No. 92 AP-1205, 1993 WL 55171; *Pancoe v. Dye*, 9th Dist. Lorain No. 15546, 15583, 1992 WL 308553.

{¶50} Further, it is well settled that any contributory negligence of the decedent cannot be a defense to vehicular homicide, unless it is the sole proximate cause of the accident. *State v. Langenkamp*, 137 Ohio App.3d 614, 620, 2000-Ohio-1831, 739 N.E.2d 404, 409 (3rd Dist. 2000); *State v. Garland*, 116 Ohio App.3d 461, 468, 688 N.E.2d 557, 562(12th Dist. 1996); *State v. Vansickle*, 5th Dist. Licking No. CA-3682, 1992 WL 61579; *State v. McGraw* 3rd Dist. Shelby No. 17-88-2, 1989 WL 153589; *State v. Royer*, 3rd Dist. Logan No. 8-80-20, 1981 WL 6723; *State v. Grant*, 11th Dist. Lake No. 92-L-037, 1993 WL 273402; *Cleveland v. Calhoun*, 8th Dist. Cuyahoga No. 59413, 1991 WL 238924; *State v. Dailey*, 5th Dist. Morrow No. 2006-CA-0012, 2007-Ohio-2544.

{¶51} The trial court's instructions adequately informed the jury that Dunham's act of operating a motor vehicle under the influence of alcohol had to be the direct cause of Volkmer's death and without which the death would not have happened. The instructions adequately informed the jury that Dunham would be criminally responsible for his acts even if other "causes" came into play. As long as the state proved beyond a reasonable doubt that Dunham's actions were a cause of death, it is irrelevant whether there were any other contributory causes.

**{¶52}** Based upon the record, we find that Dunham has failed to demonstrate that the trial court's misstatement to the jury affected his substantial rights.

**{¶53}** Dunham's second assignment of error is overruled.

III.

**{¶54}** In his third assignment of error, Dunham claims that the trial court failed to make the required statutory findings when it imposed consecutive sentences.

**{¶55}** R.C. 2953.08 governs an appeal of sentence for felony. Subsection (G)(2) states as follows:

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶56}** 2011 Am.Sub.H.B. No. 86, which became effective on September 30, 2011, revived the language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The revisions to the felony sentencing statutes under 2011 Am.Sub.H.B.

No. 86 now require a trial court to make specific findings when imposing consecutive sentences. R.C. 2929.14(C)(4) provides, in relevant part:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender **and** that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, **and** if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(Emphasis added). In Section 11, the legislature explained that in amending former R.C. 2929.14(E)(4), it intended "to simultaneously repeal and revive the amended language

in those divisions that was invalidated and severed by the Ohio Supreme Court's decision in *State v. Foster* (2006), 109 Ohio St.3d 1." The General Assembly further explained that the amended language in those divisions "is subject to reenactment under the United States Supreme Court's decision in *Oregon v. Ice* (2009), 555 U.S. 160, and the Ohio Supreme Court's decision in *State v. Hodge* (2010), ——— Ohio St.3d – ———, Slip Opinion No. 2010–Ohio–6320." Thus, it is the legislature's intent that courts interpret the language in R.C. 2929.14(C)(4) in the same manner as the courts did prior to *State v. Foster,* 109 Ohio St.3d 1, 2006–Ohio–856, 845 N.E.2d 470.

{¶57} Regarding consecutive sentences, in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the Ohio Supreme Court held that because R.C. 2929.14(E)(4) and 2929.41(A) require judicial fact-finding before a court can impose consecutive sentences, they are unconstitutional and ordered them to be severed. *Foster, supra,* paragraph three of the syllabus. In striking down these and other parts of Ohio's sentencing scheme, the *Foster* court held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id., paragraph seven of the syllabus.

{¶58} The United States Supreme Court in *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), subsequently held that the right to a jury trial under the Sixth Amendment to the United States Constitution does not preclude states from requiring trial court judges to engage in judicial fact-finding prior to imposing consecutive sentences. *Ice, supra*, at 171–172.

**{¶59}** Thereafter, in *State v. Hodge*, 128 Ohio St.3d 1, 2010–Ohio–6320, 941 N.E.2d 768, the Ohio Supreme Court addressed "whether, as a consequence of the decision in *Ice*, Ohio trial courts imposing consecutive sentences must first make the findings specified in R.C. 2929.14(E)(4) in order to overcome the presumption for concurrent sentences in R.C. 2929.41(A)." *Hodge*, supra, at ¶ 9. In answering the question in the negative, the court held: (1) the Sixth Amendment right to a jury trial does not preclude states from requiring trial court judges to engage in judicial fact-finding prior to imposing consecutive sentences; (2) *Ice* does not revive Ohio's former consecutive-sentencing statutes held unconstitutional in *Foster*; and (3) trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that such findings be made. Id., paragraphs one, two, and three of the syllabus. Trial judges have "'the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently.'" Id. at ¶12, quoting *State v. Bates*, 118 Ohio St.3d 174, 2008–Ohio–1983, 887 N.E.2d 328, ¶¶18–19.

**{¶60}** The *Hodge* court further explained that *Foster* merely took away a trial judge's duty to make findings before imposing consecutive sentences and that *Ice* did not directly overrule *Foster. Hodge, supra,* at ¶ 17, 37. The court indicated, "Although the *Ice* decision holds that it is constitutionally permissible for a judge to engage in judicial fact-finding to impose consecutive sentences, there is no constitutional requirement that a judge make findings of fact before imposing consecutive sentences." *Id.* at ¶ 26. 2011 Am.Sub.H.B. No. 86, which became effective on September 30, 2011, revived the language provided in former R.C. 2929.14(E) and moved it to R.C.

2929.14(C)(4). The revisions to the felony sentencing statutes under 2011 Am.Sub.H.B. No. 86 now require a trial court to make specific findings when imposing consecutive sentences.

**{¶61}** The First District Court of Appeals has observed,

The consecutive-sentence findings required by R.C. 2929.14(C) are not the same as those required by former R.C. 2929.19(B)(2), which provided that the trial court "shall impose a sentence and shall make a finding that *gives its reasons* for selecting the sentence * * * (c) If it imposes consecutive sentences ." (Emphasis added.) *See State v. Comer,* 99 Ohio St.3d 463, 2003–Ohio–4165, 793 N.E.2d 473, ¶ 14–16. In 2003, the Ohio Supreme Court held that the requirement that a trial court give its reasons for selecting consecutive sentences was "separate and distinct from the duty to make the findings," and it imposed an obligation on trial courts to articulate the reasons supporting their findings at the sentencing hearing. *Id.* at ¶ 19–20, 793 N.E.2d 473. The trial court's obligation to "give its reasons" is now gone from the sentencing statutes. Gone with it, we hold, is the requirement that the trial court articulate and justify its findings at the sentencing hearing. A trial court is free to do so, of course. But where, as here, there is no statutory requirement that the trial court articulate its reasons, it does not commit reversible error if it fails to do so, as long as it has made the required findings. *See Phillips,* 1st Dist. No. C– 960898, 1997 Ohio App. LEXIS 2615, 1997 WL 330605.

*State v. Alexander*, 1st Dist. Nos. C-110828, C-110829, 2012-Ohio-3349, ¶ 18. *Accord, State v. Frasca,* 11th Dist. 2011-T-0108, 2012-Ohio-3746, ¶ 57.

**{¶62}** "The trial court is not required to give reasons explaining these findings, nor is the court required to recite any 'magic' or 'talismanic' words when imposing consecutive sentences." *State v. Roush*, 10th Dist. No. 12AP–201, 2013–Ohio–3162, ¶ 76, citing *State v. Frasca*, 11th Dist. No. 2011–T–0108, 2012–Ohio–3746, ¶ 57. "Nevertheless, the record must reflect that the court made the findings required by the statute." Id.; *Accord, State v. Murrin,* 8th Dist. No. 83714, 2004–Ohio–3962, ¶ 12; *State v. Jones*, 1st Dist. No. C-110603, 2012-Ohio-2075, ¶ 22. Likewise, "under H.B. 86, a trial court is not required to articulate and justify its findings at the sentencing hearing when it imposes consecutive sentences as it had to do under S.B. 2." *State v. Redd*, 8th Dist. Cuyahoga No. 98064, 2012–Ohio–5417, ¶12. However, the record must clearly demonstrate that consecutive sentences are not only appropriate, but are clearly supported by the record. *See State v. Bonnell*, 5th Dist. Delaware No. 12CAA3022, 2012–Ohio–5150[1]; State v. Wampler, 5th Dist. Fairfield No. 13-CA-3, 2014-Ohio-37. An appellate court may only sustain an assignment of error challenging the imposition of consecutive sentences under R.C. 2929.14 if the appellant shows that the judgment was clearly and convincingly contrary to law. R.C. 2953.08(G). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus.

---

[1] We note that the Ohio Supreme Court has accepted this issue for review. *State v. Bonnell*, 135 Ohio St.3d 1412, 2013-Ohio-1622, 986 N.E.2d 29.

**{¶63}** In the case at bar, the record reflects the excessive amount of alcohol involved, the extreme speed at which Dunham was traveling at the time of the crash, and the massive impact of the crash. The record also proves the extreme pain and suffering endured by the victims, Dunham's attempt to minimize his involvement in the crash and his decision to not truthfully and fully cooperate with the investigation.

**{¶64}** Although the trial court in the present matter may not have used the exact wording of the statute in reaching the findings to support the imposition of consecutive sentences, courts have found that, in making findings regarding consecutive sentencing, "a verbatim recitation of the statutory language is not required by the trial court." *State v. Green,* 11th Dist. No. 2003–A–0089, 2005–Ohio–3268 ¶ 26, citing *State v. Grissom,* 11th Dist. No. 2001–L–107, 2002–Ohio–5154 ¶ 21. *State v. Frasca, supra*, 2012-Ohio-3746, ¶ 60. In the case at bar, the trial court noted,

> I am making these sentences consecutive because these two offenses were committed as part of one or more course of conduct [sic.], the harm caused by the two or more multiple offenses was so great or unusual that no single prison term for any one of the offenses adequately reflects the seriousness of your conduct.
>
> What I am saying is that you killed a man and you seriously injured another. They each deserve recognition in the sentence imposed here.

(Sent. T. Feb. 19, 2013, 22-23).

**{¶65}** We find that the record adequately reflects consecutive sentences were necessary to protect the public and to punish Dunham, and that they were not disproportionate to the seriousness of his conduct and the danger he posed to the

public. In addition, the record reflects consecutive sentences were necessary to protect the public from future crime. The trial court's decision to run the sentences consecutively is not clearly and convincing contrary to law.

{¶66} Dunham's third assignment of error is overruled.

IV.

{¶67} In his fourth assignment of error, Dunham contends that the trial court erred when it sentenced him to a class one driver license suspension. The state concedes this error and agrees that Dunham can only be sentenced for a class two driver license suspension.

{¶68} Dunham's fourth assignment of error is sustained.

V.

{¶69} In his fifth assignment of error, Dunham argues that his convictions under R.C. 4511.19(A)(1)(a) should have merged with R .C. 2903.06(A)(1)(a) and 2903.08(A)(1)(a), as they were allied offenses of similar import.

{¶70} Aggravated vehicular homicide under R.C. 2903.06(A)(1)(a) provides:

No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance[.]

{¶71} Aggravated vehicular assault under R.C. 2903.08(A)(1)(a) provides:

No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft,

shall cause serious physical harm to another person * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance[.]

{¶72} R.C. 4511.19(A)(1)(a) provides that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶73} R.C. 2941.25, Multiple counts states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶74} "[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542(1983). *See, also, State v. Moss*, 69 Ohio St.2d 515, 518, 433 N.E.2d 181(1982). In *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425(1984), the United States Supreme Court stated:

Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, *United States v. Wiltberger*, 5 Wheat. 76, 93, 5 L.Ed. 37 (1820), the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent, see *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

**{¶75}** The Double Jeopardy Clause of the federal constitution "protects only against the imposition of multiple criminal punishments for the same offense, * * * and then only when such occurs in successive proceedings." (Citations omitted.) *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488 (1997); *State v. Martello*, 97 Ohio St.3d 398, 2002–Ohio–6661, ¶ 8. "If pursued in a single proceeding, * * * multiple punishment may constitutionally be imposed [.]" *State v. Gustafson*, 76 Ohio St.3d 425, 437, 1996-Ohio-299, 668 N.E.2d 435.

**{¶76}** In *State v. Bayer*, 10th Dist. Franklin No. 11AP–733, 2012–Ohio–5469, our brethren from the Tenth District addressed whether merger was required in light of R.C. 2929.41(B)(3) when a defendant is convicted of operating a motor vehicle while under the influence in violation of R.C. 4511.19 and aggravated vehicular assault in violation of R.C. 2903.08. The *Bayer* court considered the language of R.C. 2929.14(B)(3) and held,

The General Assembly thereby clearly reflected its intent that a trial court may, in its discretion, sentence a defendant for both OVI and AVA. That intent conflicts with the intent reflected in R.C. 2941.25. That is, R.C. 2929.41 evidences the intent of the legislature that those two offenses

should not merge-a conclusion that necessarily follows from the fact that a trial court could not order sentences to be served consecutively unless the court had first imposed more than just one sentence. Pursuant to the merger analysis for allied offenses established by the general rule of R.C. 2941.25, the prosecutor in appellant's case would have been required to elect between the two allied offenses to which the defendant pled guilty and then pursued sentencing on only one. This is so because, in applying the merger of allied offenses rule established in R.C. 2941.25, "the trial court must accept the state's choice among allied offenses, 'merge the crimes *into a single conviction for sentencing*, and impose a sentence that is appropriate for the merged offense.'" (Emphasis added.) *State v. Wilson*, 129 Ohio St.3d 214, 2011–Ohio-2669, ¶ 13, *citing State v. Whitfield*, 124 Ohio St.3d 319, 2010–Ohio–2, ¶ 24, *and State v. Brown*, 119 Ohio St.3d 447, 2008–Ohio–4569, ¶ 41. *See also Whitfield* at ¶ 12 ("[F]or purposes of R.C. 2941.25, a 'conviction' consists of a guilty verdict and the imposition of a sentence or penalty." (Emphasis sic.)).

In short, we find that, where a defendant is found guilty of operating a motor vehicle while intoxicated and is also found guilty of aggravated vehicular assault, that defendant may be found guilty and sentenced on both. Assuming, arguendo, that OVI and AVA are allied offenses, R.C. 2929.41(B)(3) creates an exception to the general rule provided in R.C. 2941.25 that allied offenses must be merged so that a defendant may be convicted, i.e., found guilty and sentenced, on either the OVI or the AVA,

but not both. Accordingly, the trial court had the discretion, pursuant to

R.C. 2929.419(B)(3), to enter convictions of both OVI and AVA and to

sentence appellant to serve consecutive sentences for those two crimes.

*Bayer,* 2012-Ohio-5469, ¶¶21-22; *Accord State v. Demirci*, 11th Dist. Lake No. 2011–L–

142, 2013–Ohio–2399; *State v. Kraft,* 5th Dist. Delaware No. 13 CAA 03 0013, 2013-

Ohio-4658.

**{¶77}** We concur with the *Bayer* analysis, and note the Supreme Court of Ohio

did not accept the appeal for review. *State v. Bayer,* 136 Ohio St.3d 1453, 2013–Ohio–

3210; *State v. Kraft,* ¶ 34. We find the rationale expressed in *Bayer* applies with equal

force to a conviction for aggravated vehicular homicide under R.C. 2903.06(A)(1)(a).

**{¶78}** Dunham's fifth assignment of error is overruled.

VI.

**{¶79}** In his sixth assignment of error, Dunham avers that the trial court

improperly ordered restitution of an amount that had been paid by insurance.

**{¶80}** R.C. 2929.18 governs financial sanctions. Subsection (A)(1) states the

following:

> (A) Except as otherwise provided in this division and in addition to
>
> imposing court costs pursuant to section 2947.23 of the Revised Code,
>
> the court imposing a sentence upon an offender for a felony may sentence
>
> the offender to any financial sanction or combination of financial sanctions
>
> authorized under this section or, in the circumstances specified in section
>
> 2929.32 of the Revised Code, may impose upon the offender a fine in

accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

{¶81} A trial court has discretion to order restitution in an appropriate case and may base the amount it orders on a recommendation of the victim, the offender, a

presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, but the amount ordered cannot be greater than the amount of economic loss suffered as a direct and proximate result of the commission of the offense. *State v. Lalain,* 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, paragraph one of the syllabus. A trial court is required to conduct a hearing on restitution only if the offender, victim, or survivor disputes the amount of restitution ordered. Id. at paragraph two of the syllabus.

**{¶82}** R.C. 2929.18(A)(1) states that the trial court's order of restitution shall not exceed the amount of economic loss suffered by the victim. A double recovery would amount to an impermissible economic windfall for the victim. Accordingly, the evidence introduced to demonstrate the actual economic loss suffered by the victim must take account of any offsets to the victim's economic loss and any mitigation of damages in the form of compensation received for the loss from, for example, insurance, the Ohio Title Defect Rescission Fund, or civil judgments against the defendant. *State v. Martin*, 140 Ohio App.3d 326, 2000-Ohio-1942, 747 N.E.2d 318(4th Dist.); *State v. Christy*, 3rd Dist. Wyandot No. 16-06-01, 2006-Ohio-4319.

**{¶83}** In the case at bar, the state requested restitution for the funeral expenses of Mason Volkmer at sentencing. Dunham stated that he thought it had been paid by insurance, but was unsure. The trial court ordered the restitution. Dunham did not ask for a hearing or to continue the matter to obtain documentation.

**{¶84}** A defendant who does not dispute an amount of restitution, request a hearing, or otherwise object waives all but plain error in regards to the order of restitution. *State v. Ratliff,* 194 Ohio App.3d 202, 2011-Ohio-2313, 955 N.E.2d 425(2nd

Dist), ¶14. In this case, Dunham did indicate that the court previously determined restitution was not to be ordered because the expenses had been paid by insurance. See, Sent. T. July 11, 2011 at 18-19; Sent. T. Feb. 19, 2013 at 21-22. We are concerned, however, with Dunham's argument that the trial court awarded funeral expenses without considering any insurance payments the victim had received. R.C. 2929.18(A)(1) unequivocally states that restitution is to be paid "in an amount based on the victim's economic loss." Since the victim's economic loss would be total expenses less any amount paid by the insurance carrier, awarding restitution without considering any insurance payments was plain error. *State v. Mobley-Melbar,* 8th Dist. Cuyahoga No. 92314, 2010-Ohio-3177, ¶41; *State v. Colon*, 185 Ohio App.3d 671, 2010-Ohio-492, 925 N.E.2d 212, ¶ 7 ("It is well settled that restitution may not exceed a crime victim's economic loss and, as a result, must be reduced by any insurance payment received.").

**{¶85}** Because the trial court failed to consider any insurance payments made with regard to the victim's total funeral expenses, this case must be remanded for a hearing on restitution.

**{¶86}** Dunham's sixth assignment of error is sustained.

{¶87} For the forgoing reasons, the judgment of the Richland County Court of Common Pleas is affirmed in part and reversed in part and this matter is remanded for proceedings in accordance with our opinion and the law.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur